[S. F. No. 1097. In Bank.—December 26, 1899.]

## GEORGE DAVIS, Appellant, v. PACIFIC TELEPHONE AND TELEGRAPH COMPANY, Respondent.

MALICIOUS PROSECUTION—CHARGE OF MISDEMEANOR—BURDEN OF PROOF.— In an action for a malicious prosecution by the defendant of the plaintiff in causing his arrest and prosecution upon a charge of misdemeanor, maliciously and without probable cause, the burden of proof is upon the plaintiff to show both malice and want of probable cause.

ID.—WANT OF PROBABLE CAUSE.—In proving want of probable cause, the plaintiff must show that the arrest and prosecution were not under such circumstances as would justify the suspicion in a reasonable man that the charge was true.

ID.—WILLFUL CUTTING OF TELEGRAPH WIRES—WANT OF PROBABLE CAUSE NOT SHOWN.—Where telegraph wires were willfully cut by the plaintiff under the advice of counsel for the purpose of testing the legality of wires erected and maintained under a franchise of the board of supervisors, and with the expectation of arrest therefor, probable cause appears for the prosecution, and the fact that the plaintiff was discharged in the police court does not establish a want of probable cause for the prosecution, nor require the submission to the jury of that question.

ID.—RECOVERY LIMITED TO COMPLAINT—VARIANCE.—A recovery can only be had upon the cause of action alleged in the complaint; and no recovery can be had upon some other and distinct cause of action developed by the proofs.

ID.—CHARGE OF MALICIOUS PROSECUTION—FALSE IMPRISONMENT NOT ALLEGED—INCONSISTENT CAUSES OF ACTION.—Where the gist of the action, as brought, appears from the complaint to be a malicious prosecution for a misdemeanor, and an arrest therefor under legal process, there can be no recovery for a false imprisonment, which must proceed upon an allegation of arrest without legal authority, and no evidence upon the latter charge should be submitted to the jury, nor should any instructions be given thereupon. Each of these causes of action is distinct from the other, and the two are inconsistent with each other.

ID.—AUTHORITY FOR ARREST—PLEADING—PRESUMPTION.—A private person, as well as an officer, may arrest another for a public offense committed or attempted in his presence, and where the complaint alleges that the plaintiff was charged with a criminal offense, and that the defendant procured a police officer to arrest the plaintiff, and does not allege that the arrest was without authority, it must be presumed to have been made by the officer upon a proper warrant, or by reason of the commission of the offense in the presence of the officer.

ID.—PROSECUTION FOR CUTTING "TELEGRAPH" WIRES—"TELEPHONE"— CONSTRUCTION OF PENAL CODE.—A "telephone" is included within the meaning of the word "telegraph," as used in section 591 of the Penal Code, forbidding the removal or obstruction of any line of telegraph or the severing of any wire thereof; and a criminal prosecution will lie under that section for the cutting or destruction of telephone wires.

ID.—STRICT CONSTRUCTION OF PENAL STATUTES—COMMON-LAW RULE INAPPLICABLE.—The rule of the common law that penal statutes are to be strictly construed has no application to the construction of the Penal Code, which is regulated by section 4 of that code.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. William S. Daingerfield, Judge.

The facts are stated in the opinion of the court.

Crandall & Bull, for Appellant.

The defendant was liable, under the complaint, for a false imprisonment, the arrest being without authority, and the defendant must show lawful authority. (*Ah Fong v. Sternes*, 79 Cal. 30; *People v. McGrew*, 77 Cal. 570; *Allen v. Parkhurst*, 10 Vt. 557; *Philips v. Trull*, 11 Johns. 486; *Arkansas City Bank v. McDowell*, 7 Kan. App. 568.) The question of want of probable cause was for the jury. (*Ball v. Rawles*, 93 Cal. 234; 27 Am. St. Rep. 174; *Retter v. Ewing*, 174 Pa. St. 34.)

E. S. Pillsbury, and F. D. Madison, for Respondent.

The arrest by a private person was lawful, and the action of the officer must be presumed lawful. (Pen. Code, sec. 877; *Butolph v. Blust*, 5 Lans. 84; *Taylor v. Strong*, 3 Wend. 385; *Main v. McCarty*, 15 Ill. 441; *Fry v. Kaessner*, 48 Neb. 133; *Baltimore etc. R. R. Co. v. Cain*, 81 Md. 87; *Ramsey v. State*, 92 Ga. 53; *Dilger v. Commonwealth*, 88 Ky. 550; *Derecourt v. Corbishley*, 5 El. & B. 188.) The complaint states a cause of action for malicious prosecution, and alleges facts inconsistent with an action for false imprisonment. (*Coller v. Lower*, 35 Ind. 285; 9 Am. Rep. 735; *Turpin v. Remy*, 3 Blackf. 210; *Seeger v. Pfeifer*, 35 Ind. 13; *Murphy v. Martin*, 58 Wis. 276; *Gelzenleuchter v. Niemeyer*, 64 Wis. 316; 54 Am. Rep. 616; *Nebenzahl v. Townsend*, 10 Daly, 232.) The arrest was in good faith, without malice and for probable cause, and the nonsuit was properly granted; the plaintiff having wholly to sustain the burden of proving malice and want of probable cause. (*Potter v. Seale*, 8 Cal. 217; *Grant v. Moore*, 29 Cal. 644; *Ganea v. Southern Pac. R. R. Co.*, 51 Cal. 140; *Dwain v. Descalso*, 66 Cal. 415; *Jones v. Jones*, 71 Cal. 89; *Lacey v. Porter*, 103 Cal. 597, 605; *Smith v. Liverpool Ins. Co.*, 107 Cal. 432; *Legallee v. Blaisdell*, 134 Mass. 473.) The cutting of telephone wires was the cutting of telegraph wires within the meaning of section 591 of the Penal Code. (*Attorney General v. Edison Teleph. Co.*, 6 Q. B. Div. 244; *Telephone Co. v. Board of Equalization*, 67 Iowa, 254; *Chesapeake Teleph. Co. v. Baltimore etc. Tel. Co.*, 66 Md. 399; 59 Am. Rep. 167; *Franklin v. North Western Teleph. Co.*, 69 Iowa, 97; *Wisconsin Teleph. Co. v. Oshkosh*, 62 Wis. 32; *Duke v. Central N. J. Tel. Co.*, 53 N. J. L. 341; 25 Am. & Eng. Ency. of Law, 746; Pen. Code, sec. 4.)

HENSHAW, J.—A rehearing was granted in this case for consideration of a question not discussed in the Department opinion, namely, whether "telephone" is included within the meaning of "telegraph," as used in section 591 of the Penal Code. It appeared that in the criminal action the defendant was charged with cutting telegraph wires, while the facts without dispute disclosed that the wires which he cut were used as telephone wires. The importance of the consideration in the case at bar arises from the fact that if telephone wires are not within the purview of section 591 it would tend to show lack of probable cause to procure the arrest and prosecution of a person charging him with cutting telegraph wires, when the known fact was that he had cut telephone wires.

The cases are numerous where the question has come under consideration, and the holding of the courts has been uniform that "telephone" is included within the meaning of "telegraph." Many of these cases are noted in 25 American and English Encyclopedia of Law, at page 746. In *Attorney General v. Edison Teleph. Co.*, 6 Q. B. Div. 244, it was held that a telephone was a telegraph within the meaning of the telegraph acts, although the telephone was not invented or contemplated at the time of the passage of those acts. It was further declared that a conversation through the telephone was a message, or, at all events, "a communication transmitted by a telegraph, and therefore a telegram within the meaning of the acts." In *Richmond v. Southern Bell Teleph. etc. Co.*, 85 Fed. Rep. 19, the circuit court of appeals, construing an act of Congress of 1866 relative to "telegraph companies," and answering the question whether those words included telephone companies, declared that each was but a form of use, the product and result of the same principle, and that the names were only used to distinguish the method of communication. In *Chesapeake etc. Teleph. Co. v. Baltimore etc. Tel. Co.*, 66 Md. 399, 59 Am. Rep. 167, the court, in construing an early act relative to telegraph companies, declared that the term "telegraph," which means and includes any apparatus or adjustment of instruments for transmitting messages or other communications by means of electric currents and signals, embraces the telephone. In *Iowa etc. Tel. Co. v. Board of Equalization*, 67 Iowa, 250, it was held that, by reason of the substantial identity

of telephonic and telegraphic modes of communication, the telephone company was to be regarded for purposes of taxation as coming under the denomination of a telegraph company.

These cases are sufficient by way of illustration, though many more could be instanced. They are civil cases, it is true, but they at least serve to show the unanimity and uniformity of the courts' determinations upon the question.

If the consideration could be limited to a strict etymological point of view, it would have to be conceded at once that there is a difference in the meaning of the two words, the one conveying the idea of transmission of writing to a distance, the other the transmission of sound to a distance. In the very early history of the telegraph it is a matter of common knowledge that there was an actual recordation of letters under the Morse code. That soon passed away, and the telegraph operator of to-day receives by sound upon a principle no different from that which obtains in the telephone. Again, in the case of submarine cables neither sound nor writing is always employed, but the varying deflections of an indicator within sight of the receiver serve the like purpose. The words, therefore, cannot be limited to their etymological meaning, and consideration must be had to their present sense and acceptation. Anderson's Dictionary of Law, defining "telegraph," says that it "includes any apparatus for transmitting messages or other communications by means of electric signals." Defining "telephone," he declares it to be "a conversation held through a telephone, a message or a communication transmitted by a telegraph—a telegram. A telephone is a telegraph. The idea conveyed by each term is the sending of intelligence to a distance." Accepting these definitions—and they are well supported—the term "telegraph" means any apparatus for transmitting messages by means of electric currents and signals, and embraces within its meaning the narrower word "telephone."

But is this construction justifiable in the case of the penal statute? Section 4 of our Penal Code provides that "the rule of the common law that penal statutes are to be strictly construed has no application to this code. All its provisions are to be construed according to the fair import of their terms with a view to effect its object and to promote justice." In contem-

plation of this section, in recognition of the fact that a substantial identity exists between the two words, we think no hesitation need be expressed in declaring that under section 591 of the Penal Code a criminal prosecution will lie for the illegal destruction of a telephone wire.

The opinion heretofore rendered in Department is, therefore, adopted, and the judgment is affirmed.

Garoutte, J., McFarland, J., Van Dyke, J., Temple, J., Harrison, J., and Beatty, C. J., concurred.

The following is the opinion of Department One above referred to, rendered on the 12th of June, 1899:

COOPER, C.—This is an action to recover damages for malicious prosecution.   The complaint alleges that on the seventeenth day of October, 1891, the defendant caused a complaint to be verified and filed against the plaintiff, charging him with a criminal offense, to wit, "with willfully, unlawfully, and maliciously taking down, removing, injuring, and obstructing a line of telegraph in the city and county of San Francisco," and that on said complaint the defendant caused plaintiff to be arrested and prosecuted in the police court of said city.   That in so doing "the defendant acted maliciously and without probable cause," and that plaintiff was afterward acquitted of the said offense.   The plaintiff was charged in said police court with the violation of section 591 of the Penal Code, which is as follows: "Every person who maliciously takes down, removes, injures, or obstructs any line of telegraph, or any part thereof, or appurtenance or apparatus connected therewith, or severs any wire thereof, is guilty of a misdemeanor."

The undisputed facts as established at the trial were substantially as follows: A number of persons engaged in the business of moving houses in the city and county of San Francisco thought that the telegraph and telephone companies had no right to make the parties so engaged in moving houses pay the expense of moving or changing the telegraph wires when such removal or change became necessary by the removal of a house. Controversies had before arisen as to the right of the companies to exact payment of the house-movers.   Accordingly, the house-

movers organized for the purpose of testing the law, and employed an attorney. The attorney advised the plaintiff, who appears to have been the treasurer and manager of the association, to serve a written notice upon defendant to the effect that he was moving a house on Union street in said city, and that the wires used by defendant were an obstruction to him, and demanding that the wires be removed by 1 o'clock of the morning of October 17, 1891. The notice was accordingly prepared by the attorney for the association and served by plaintiff upon defendant. Plaintiff, upon serving the notice, said nothing in explanation, but walked away. He had been advised by the attorney so retained that the way to test the law was to cut the wires after serving notice, and that he would then probably be arrested. The attorney prepared a bail bond for him and agreed to attend to the case and to all the "wire cases" that should come up. At 1 o'clock on the morning of the 17th of October the president and superintendent of defendant and several police officers appeared at the place designated in the notice. Plaintiff did not then cut the wires, but the next day, during the busy part of the day, and while no police officers were around, he cut about a dozen of defendant's wires in the presence of an employee of defendant. The employee immediately telephoned for the police officers, and in fifteen or twenty minutes two came up, and upon their arrival the employee arrested the plaintiff and turned him over to the police. The whole party then boarded a Union street car and proceeded to the old city hall, where plaintiff was charged with cutting telegraph wires, contrary to the provisions of law and section 591 of the Penal Code. Bail was fixed at sixty dollars, which plaintiff deposited instead of giving the bond prepared by his attorney, and was then released. He was discharged in the police court. After testimony was given, establishing the facts as herein stated, in the court below, defendant made a motion for a nonsuit upon several grounds, among others upon the ground that the evidence offered on the part of plaintiff failed to show either malice or want of probable cause. The court granted the motion, and judgment of nonsuit was entered. Motion for a new trial was made and denied, and plaintiff appeals from the judgment and order. It is contended by plaintiff that there was evidence of

malice and want of probable cause sufficient to entitle the case to go to the jury. It is incumbent upon the plaintiff, and the burden of proof is upon him, in an action of this kind to prove both malice and want of probable cause. (2 Greenleaf on Evidence, sec. 454; *Potter v. Seale,* 8 Cal. 221; *Grant v. Moore,* 29 Cal. 656; *Anderson v. Coleman,* 53 Cal. 188.) Probable cause is a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true. (2 Greenleaf on Evidence, secs. 453-57; *Potter v. Seale, supra; Smith v. Liverpool etc. Ins. Co.,* 107 Cal. 433.)

Where there is no conflicting testimony the question whether or not the evidence introduced by plaintiff shows want of probable cause is always for the court to decide, and it is error in such case, where there is no proof of want of probable cause, to submit any question to the jury. (*Dwain v. Descalso,* 66 Cal. 415; *Smith v. Liverpool etc. Ins. Co., supra.*)

It was therefore incumbent on the plaintiff in this case, in order to entitle him to recover, to prove the allegations of his complaint. He alleged that the prosecution was malicious and without probable cause. The primary question was the want of probable cause for the prosecution complained of, and this must have been established by the plaintiff before he could claim the right to have the case go to the jury. It was therefore essential for plaintiff to prove that his arrest and prosecution were not under such circumstances as would justify a suspicion in a reasonable man that the charge was true. Let us examine the facts and determine whether or not they warranted such suspicion. The section of the Penal Code hereinbefore cited makes it a misdemeanor for anyone to maliciously tear down, remove, or injure any line of telegraph. The plaintiff deliberately, with the advice of counsel, for the purpose of testing the law, with the expectation of being arrested, and during the busy hours of the day, cut about a dozen wires of defendant's telegraph line. The circumstances were such that appellant and his attorney (and we suppose they were reasonable men) expected an arrest to follow. The wires were cut in the presence of an employee of defendant. An act is in contemplation of law done maliciously where it is wrongful and is done intentionally. (Pen. Code, sec. 7, subd. 4; *People v. Taylor,* 36 Cal. 257; *People v. Ah Toon,*

68 Cal. 362.) The act of plaintiff in cutting the wires was unlawful, and he knew it to be. He had been so advised by his attorney. In the complaint in this case, which was verified, he alleges that the complaint in the police court charged him with a criminal offense in the willful cutting of telegraph wires. It is not questioned that the wires of defendant had been erected and were being maintained under a franchise from the board of supervisors. It is not claimed that they in any way interfered with the regular use of the highway by the public, nor that they were upon private property. There is no attempt made to show that appellant had any legal authority to cut them. It seems to us that the circumstances were amply sufficient to warrant a reasonable person in the belief that the plaintiff had committed a crime. The fact that he was discharged in the police court is but a circumstance, and in no way convinces us that the charge was without probable cause. This court in *Janin v. London etc. Bank*, 92 Cal. 27, said: "In order to justify the submission of any question of fact to a jury, the proof must be sufficient to·raise more than a mere conjecture or surmise that the fact is as alleged. It must be such that a rational, well-constructed mind can reasonably draw from it the conclusion that the fact exists, and when the evidence is not sufficient to justify such an inference the court may properly refuse to submit the question to a jury." Applying the rule to this case, we do not think there was evidence sufficient to convince a rational, well-constructed mind that there was no probable cause for plaintiff's arrest in the police court. Counsel for plaintiff seem to have apprehended that they had not proved the case as alleged in the complaint because they devote the first half of their brief to arguing that the complaint is sufficient to sustain an action for false imprisonment, and that the evidence should have been submitted to the jury with proper instructions on that issue. We do not think the contention can be maintained. We will take the definition of false imprisonment as given by plaintiff's counsel: "False imprisonment is a trespass committed by one man against the person of another by unlawfully arresting him and detaining him without any legal authority." In order for the complaint to state a cause of action under the above definition, it would have to show that the de-

fendant unlawfully arrested the plaintiff without legal authority.
The complaint not only fails to state that the arrest was unlaw-
ful and without legal authority, but states that it was lawful and
upon a complaint charging plaintiff with a criminal offense and
by a police officer of the city and county.   The plaintiff, in
order to make out a case of malicious prosecution in his com-
plaint, had to allege that he was arrested by legal process; on the
other hand, in an action for false imprisonment he would have
to allege that he was arrested without legal authority.

The rule has often been stated by this court that the plaintiff
must recover, if at all, upon the cause of action set out in his
complaint, and not upon some other which may be developed by
the proofs.   (*Mondran v. Goux,* 51 Cal. 151; *Evans v. Bailey,* 66
Cal. 113; *Shenandoah etc. Co. v. Morgan,* 106 Cal. 409.)   In
*Rogers v. Sutton,* 1 Term Rep. 544, decided in 1786, Lord Lough-
borough, in discussing an action for malicious prosecution, said:
"There is no similitude or analogy between an action of trespass,
or false imprisonment, and this kind of action.   An action of
trespass is for the defendant's having done that which, upon
the stating of it, is manifestly illegal.   This kind of action is
for a prosecution which, upon the stating of it, is manifestly
legal."   This rule has always been adhered to, not only in Eng-
land, but in this country.   (*Colter v. Lower,* 35 Ind. 285; *Turpin
v. Remy,* 3 Blackf. 210; *Seeger v. Pfeifer,* 35 Ind. 13; *Murphy v.
Martin,* 58 Wis. 276; *Elsee v. Smith,* 2 Chit. 304; *Gelzenleuchter
v. Niemeyer,* 64 Wis. 321.)

And in the case of *Nebenzahl v. Townsend,* 10 Daly, 235, the
court used this language: "The complaint was for false im-
prisonment and malicious prosecution, which was uniting two
causes of action that were inconsistent with each other, for, if
the arrest was without lawful authority, it was not a case of ma-
licious prosecution (*Bourden v. Alloway,* 11 Mod. 180); and if
under lawful process there was no false imprisonment, the im-
prisonment being by lawful authority.   Each cause of action is
distinct from the other.   Thus, formerly for false imprisonment
the remedy was trespass, and for malicious prosecution it was
case.   (*Elsee v. Smith, supra.*)   Both cannot exist upon the
same state of facts, or, to put it more clearly, if the one lies upon
the facts the other does not."

In this case plaintiff did not attempt in his complaint to state a cause of action for false imprisonment, and we do not think under his pleading that he can make the claim for the first time in this court. We have carefully examined the cases cited by appellant's counsel and find nothing in them in conflict with what has been said. In *Ah Fong v. Sternes*, 79 Cal. 32, the court said: "We think the complaint states a good cause of action for false imprisonment. The allegation that the plaintiff was confined and restrained of his liberty by the defendant is an allegation of physical and bodily restraint, which would serve as a foundation for the old action of trespass *vi et armis*. In such an action it is not necessary to aver—as would be necessary to aver in an action for malicious prosecution—that the imprisonment was malicious or without probable cause." The court evidently recognized the distinction between the two classes of cases. Even if the complaint in this action were sufficient as pleading a cause of action for false imprisonment the evidence would not sustain it.

The arrest was made by Corcoran, an employee of defendant, in whose presence the offense was committed. A private person may arrest another for a public offense committed or attempted in his presence. (Pen. Code, sec. 837.) If the evidence were sufficient to show a false imprisonment we are again met by the objection that the complaint does not allege any restraint of any kind by defendant, but alleges that the defendant procured a police officer to arrest plaintiff. There is no statement as to whether the arrest was with or without a warrant, and the presumption of law is that a public officer performed his duty, and in this case the presumption would be that the officer either had a warrant or that the "criminal offense" was committed in the presence of the officer. The allegation of the complaint is "that he was charged with a criminal offense," and in such case plaintiff cannot now claim "that he was not charged with any criminal offense." Being charged with a criminal offense and arrested by a police officer, and nothing being averred to the contrary, it is presumed the officer had the proper warrant.

We advise that the judgment and order be affirmed.

Haynes, C., and Gray, C., concurred.