THE CHESAPEAKE AND POTOMAC TELEPHONE
COMPANY OF BALTIMORE CITY *vs.* THE
MAYOR AND CITY COUNCIL OF BALTIMORE
ET AL.

*Telephone Companies—Construction of Conduits in Streets of Balti-
more City Under a Municipal Ordinance—Injunctions.*

It was determined on a former appeal that the Chesapeake and Poto-
mac Telephone Company is entitled, under a binding municipal or-
dinance, to construct conduits for its wires in the streets of Baltimore
City under the direction of the City Commissioner.   The company

applied for permits to lay conduits in certain named streets, according to plans and specifications filed therewith ; the work to be done according to the direction of the City Commissioner. The permits were refused without any objection being made to the specifications filed. *Held*, that the company is entitled to an injunction restraining interference by the city with the construction of such conduits, but that the jurisdiction of the case should be retained by the Court below for the purpose of enforcing obedience by the company to the regulations of the City Commissioner in doing the work.

Appeal from a *pro forma* order of the Circuit Court of Baltimore City refusing the injunction asked for.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE and SCHMUCKER, JJ.

*Arthur W. Machen* and *Bernard Carter* (with whom was *William S. Bryan, Jr.*, on the brief), for the appellant.

*John V. L. Findlay, John E. Semmes* and *Leon E. Greenbaum*, for the appellees.

BRISCOE, J., delivered the opinion of the Court.

The bill in this case was filed for an injunction to restrain the appellees, the Mayor and City Council of Baltimore and its officers from preventing, obstructing, or in any way interfering with the construction, under the supervision of the City Commissioner of Baltimore, of underground conduits upon parts of certain designated streets in that city, according to plans of location and construction submitted by the appellants, or for making the necessary excavations for the conduits or from interfering with their use for the laying and using of telephone wires therein.

The injunction prayed for was on the 1st of May, 1899 denied by the Circuit Court of Baltimore City, and on the same day an appeal was directed to this Court. The case was heard on bill and exhibits and our decision of the case, upon the record then before us will be found reported in 89 Md. 689.

In the opinion then filed, we carefully considered and

passed upon the questions of law, presented in the case, but stated, in a matter of so much moment to the parties, the purposes of justice would be advanced by permitting further proceedings in the cause and that an opportunity should be given the defendants to answer and for a hearing upon the merits.

The case was then remanded, under Article 5, sec. 36 of the Code, without affirming or reversing the decree of the Court below. The case is now before us, upon bill, answer and proof, and the second appeal is from a *pro forma* order, refusing the injunction as prayed for.

The appellees contend, that the appellants are not entitled to relief for the following reasons :

First, because of the inequitable and illegal acts of the appellants.

Second, because an injunction is not the proper remedy.

Third, because the ordinance which is the foundation of their rights is not an irrepealable contract.

Fourth, because the said ordinance was subject to repeal, in the exercise of the police power and was repealed in the exercise of this power.

Fifth, because there has been no legislation of the General Assembly of Maryland, which has converted the said ordinance into an Act of Assembly.

Now we do not think that any useful purpose will be served, by repeating and elaborating the reasons which controlled us in the decision of the questions of law, raised on the former appeal. We entertain no doubt as to their correctness, and will briefly state them :

First, that injunction is a proper remedy to enforce the rights of the appellant companies.

Second, that the result of Ordinance No. 41, and of its acceptance by the company was the creation of a valid contract.

Thirdly, that the Act of 1892, ch. 200, and 1898, ch. 123 (the new charter) are legislative ratification and confirmation of that contract, and they not only operate as a

ratification of Ordinance No. 41, as of the date of their approval and of all that had then been done thereunder, but they also operate from their date of approval as a legislative grant for the future of the rights and privileges thus ratified, and as a legislative prohibition against any interference by the city therewith.

Fourthly, that the Mayor and City Council could not destroy, change or modify the plaintiff's rights and privileges granted by the Act of 1892, ch. 200, and 1898, ch. 123, and that the ordinance of April 1899, did not work a repeal of the rights acquired and granted by Ordinance No. 41, and

Fifthly, that whether it is competent for the State to repeal the legislation which confirms the rights granted by Ordinance 41, is a question which does not arise on this appeal.

We deem it right and proper, however, to state that it is in no sense the duty of this Court to question the wisdom or policy of the legislation which is attacked by the appellees in this case. If constitutional it is our plain duty to sustain it. If on the other hand, it is invalid, it would have been so declared on the former appeal. We are not, however, to be understood as intimating that the ordinance and statutes heretofore referred to are beyond legislative control.

The questions of law, then, having been settled by us in the former case, we come to a consideration of the facts, as the case now stands.

. We have carefully read and considered the evidence contained in the voluminous record before us and fail to find sufficient evidence, under the pleadings in the cause, to sustain the contention of the appellees. It will be seen that a large part of this testimony has no relation to the conduit constructions in question, or to the questions at issue in this case.

The questions here involved, as appears from the allegations of the bill, relate solely to the construction of certain underground conduits to be laid by the appellants under

the supervision of the City Commissioner of Baltimore, upon parts of the following named streets ; upon Robert street, Pennsylvania avenue, Laurens street, Fremont avenue and Winchester street, and also upon parts of Madison avenue, Presstman street, Morris alley, Druid Hill avenue, and North avenue, according to plans of location and construction submitted by the appellants to the City Commissioner.

It is not claimed, nor contended upon the part of the appellants that any other streets of the city are involved in this controversy, so it is with the use of these streets, in the proposed conduit construction by the appellant companies and with these streets only, we are concerned and have to deal.

The controlling question, then, comes to this, have the appellants complied with the terms and provisions of Ordinance No. 41, as to the proposed conduit constructions in the streets now in controversy, as entitles them to the equitable relief by injunction against the city authorities?

The object and purpose of the ordinance, as declared by its title, is to provide for laying the wires of the appellant companies in underground conduits in the city of Baltimore. It provides, that such conduits and man-holes shall be constructed in such manner as not to injure any vault, sewer, water pipe or gas pipe, and such conduits and man-holes shall be constructed by either or both of said companies, as parts of one system at their or their respective cost and expense.

And after directing certain things to be done before constructing any conduits, it specially provides, that they shall file with the City Commissioner a plan showing the location and character of the portion or portions of the conduit or conduits next proposed to be constructed and every such conduit or part thereof shall be constructed under the supervision of the City Commissioner, and all paving which may be temporarily removed by the companies or company hereinbefore mentioned, in the course of the construction of

any conduit or conduits so authorized, shall be restored or replaced under the direction and superintendence of the City Commissioner, by the companies or company constructing said conduit or conduits and at their or its expense, in a manner satisfactory to said commissioner.

In pursuance of the provisions of this ordinance, the appellants on the first of May, 1899, filed two applications for permits to construct conduits, in the streets mentioned therein, according to certain plans accompanying those applications. And to these plans showing the character of the conduits, there is annexed the following statement : " Plan, dimensions and situation of conduits to be as shown above, except where conditions may necessitate modifications sanctioned by the City Commissioner."

We quote from a portion of one of these applications addressed to the City Commissioner of Baltimore, by the president of the appellant companies :

" I herewith deliver to you a plan marked G. S. C., No. 165, showing the location of said conduit on the streets and the respective sides thereof, subject to such change in the location of the conduits in the said·streets as may be required or approved by the City Commissioner, the position of said conduits in relation to the kerb line of said streets respectively to be such as shall be approved of by the City Commissioner."   " I also deliver to you a plan marked G. S. C., No. 166, showing the character, dimensions and situations of said conduits. All of the wires to be laid in said conduits will be used in connection with telephone exchange belonging to the companies, in the telephone building at the corner of St. Paul street and Bank lane, in the city of Baltimore, space being reserved in said conduits for the laying therein by the Fire Commissioners, of the city of Baltimore, of a cable for the use of the police and fire alarm telegraph and police and patrol wires. *All* of the work under this application will be done under the supervision of the City Commissioner and subject to his approval, I respectfully ask that a permit be issued by you," &c., &c.

These applications were refused by the City Commissioner for the reasons stated, in the following letter:

"Referring to your communication of the 22nd inst., forwarding two (2) applications of your company for laying certain conduits in the city of Baltimore, said applications bearing date April 22nd, 1899, and being accompanied by plans marked 'G. S. C.,' Nos. 163, 164, 165 and 166; under instructions from the city solicitor, the only answer that I can give to your request for said granting of permits is that I must decline to issue the said permits applied for in said application."

It appears, then, from the foregoing recitals from the plans and applications filed by the appellant companies, that not only the location and character of the proposed conduits were submitted and left to the determination of the city commissioner, but the execution and construction of the whole work was to be done under his supervision, according to the positive terms of the ordinance. And it is conceded in the brief of the appellants "that the right and duty to exercise his supervision involves the right and duty to forbid any mode of construction which in his judgment would be an *unreasonable* exercise of the right granted by Ordinance No. 41."

Nor is the right and duty of the Mayor and City Council of Baltimore to adopt reasonable regulations, for the proper protection of its interests, consistent with the protection and exercise of the rights and privileges of the appellant companies under the ordinance, in any manner denied or questioned by the appellants. This right of reasonable regulations is fully sustained by the Supreme Court of the United States in the following cases: *Baltimore* v. *Baltimore Trust Co.*, 166 U. S. 673; *Laclede Gas Co.* v. *Murphy*, 170 U. S. 78.

The City Commissioner is thus made by the ordinance the representative of the city, as to the examination of the plans, which can be modified by him as the necessities of the case arise, and also as to the supervision, execution and

construction of the work.   His reasonable instructions and directions as to the whole work must be obeyed and carried out by the appellant companies.   The location and character of the conduits, and their position in relation to the kerb line of the streets are to be approved by him, including the location, dimensions and method of construction of the manholes.

In other words, the broadest powers are given the City Commissioner to protect the rights and interest of the city, in the whole work of conduit construction and the location and character of the man-holes.   It is to be done under his direction and supervision as ordained by the ordinance.

Our conclusion, then, is without extending this opinion to an unreasonable length, that as the appellant companies have filed with the City Commissioner plans setting forth the location and character of the conduits proposed to be constructed by them, as required by Ordinance No. 41, and as it is alleged that they are willing to construct them in the streets named under the supervision of the City Commissioner, they are entitled under the pleadings and evidence in this case, to the injunction against city interference, according to the prayer of their bill.

The bill, however, will be retained by the Court below, so that the decree granting this injunction can be at any time modified, in case the appellants refuse to obey the reasonable directions and regulations of the City Commissioner or the doing of acts reasonably prohibited by him.

For these reasons the *pro forma* order of the Circuit Court of Baltimore City dated the 22nd of September, 1899, refusing the injunction will be reversed and the cause remanded, to the end that an injunction may be granted in accordance with this opinion, the Court below retaining control of the case for the purposes indicated herein.

> *Order reversed and cause remanded.*
> *Costs to be paid in both Courts by*
> *the appellees.*

(Decided February 14th, 1900).