BUEL v. FARMERS' LOAN & TRUST CO. et al.

(Circuit Court of Appeals, Sixth Circuit. November 7, 1900.)

No. 779.

1. APPEAL—APPEALABLE ORDERS—REFUSING LEAVE TO INTERVENE.

An appeal does not lie from an order refusing leave to intervene and become a party.

2. SAME—WHO MAY TAKE.

An appeal cannot be taken from a decree by one who has not been a party to the cause either originally or admitted upon intervention.

3. SAME—CONSTRUCTION OF ORDER.

Findings stated in an order refusing leave to file an intervening petition, purporting to determine questions of fact raised by such petition, must be construed as having been made only for the purpose of the motion, and not as a final adjudication upon such facts, which would bind the petitioner, or give him ground for an appeal therefrom.

Appeal from the Circuit Court of the United States for the Western Division of the Southern District of Ohio.

Frank Rumsey and C. Walter Artz, for appellant.
Herbert B. Turner and Edward Colston, for appellees.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

SEVERENS, Circuit Judge. Upon the hearing of this appeal the court expressed a doubt whether it had jurisdiction to entertain it, but we permitted the argument on the merits to proceed under a reservation of that question. Upon more mature consideration we are satisfied that our doubt was well founded. The order from which the appeal is taken was one made by the circuit court, denying an application made by the appellant, on behalf of himself and others, as holders and owners of the first, second, and third preferred income bonds of the Baltimore & Ohio Southwestern Railroad Company, for leave to file an intervening petition praying to be admitted as a party, with leave to file an answer, in the case of the Farmers' Loan & Trust Company against the Baltimore & Ohio Southwestern Railway Company and others,—a consolidated cause then pending in that court. An outline of the principal case is all that is required for the purpose of ascertaining the object of the proposed intervention, and the effect of the order denying it. The Baltimore & Ohio Southwestern Railroad Company, then owning a line of road extending from Belpre, Ohio, to Cincinnati, and certain branch lines, on the 26th day of December, 1889, executed to the Farmers' Loan & Trust Company its first mortgage on all its lines of railroad to secure an issue of its gold bonds to the amount of $11,000,000, part of which were issued and sold, and a part reserved to retire a like amount of the bonds of a railroad company formerly owning the property. Then, on the 28th, 30th, and 31st days of the same month, it executed and delivered to the same trust company three several mortgages to secure three several issues of preferred income bonds, so called, denominated the first, second, and third issues of such bonds. The amount secured by the first of these three mortgages was $5,500,000, that secured by the second was $6,400,000, and that secured by the third was $7,700,000. All these bonds were issued and sold. The petitioner claims to be the owner of 14 of the first preferred income bonds, 33 of the second, and 74 of the third, amounting in all to $121,000, besides interest. On the 1st day of November, 1893, a consolidation was effected of the above-named Baltimore & Ohio Southwestern Railroad Company with the Ohio & Mississippi Railway Company, then owning a line of railroad extending from Cincinnati to East St. Louis, Ill., under the name of the Baltimore & Ohio Southwestern Railway Company. The consolidated company is one of the defendants in the principal suit. By the scheme of the consolidation a great majority of each of the first, second, and third preferred income bonds were surrendered, and in lieu thereof the owners were to receive preferred and common stock of the new company. The same privilege was accorded to all such holders of the income bonds who should surrender their bonds. A minority, including those held by the petitioner, were not surrendered. The consolidated company

on the day of its consolidation executed its first mortgage on its properties to the Farmers' Loan & Trust Company and W. H. H. Miller to secure an issue of $37,500,000 of bonds, of which about $12,000,000 are outstanding. The bill to foreclose this mortgage was filed January 9, 1899, for the nonpayment of interest due January 1, 1899, and is the foundation of one of the consolidated causes. It states that the lien of that mortgage was subordinate to the above-mentioned several mortgages of the Baltimore & Ohio Southwestern Railroad Company, so far as the property formerly owned by that company is concerned. It further appears that the consolidated company on the 2d of November, 1896, executed to a trustee its first income mortgage upon its properties to secure one issue of bonds, called "Series A," for $8,750,000, and another, called "Series B," for $10,000,000, all of which are outstanding. On the 31st day of December, 1898, the Mercantile Trust Company of New York, being a judgment creditor of the consolidated company, filed its bill, alleging the insolvency of the company, and praying the appointment of a receiver, the liquidation of its affairs, and the satisfaction of the judgment. Receivers were appointed. On January 9, 1899, upon the filing of the bill to foreclose the above-mentioned first mortgage of the consolidated company, these two causes were consolidated and the receivership extended to both. On the 3d of May, 1899, a bill was filed by the Farmers' Loan & Trust Company to foreclose the above-mentioned first mortgage of the Baltimore & Ohio Southwestern Railroad Company, and on the 27th of the same month this cause was consolidated with the other two already consolidated. Proper parties were made defendants in these several causes, unless it be that the minority bondholders, such as the petitioner, should have been joined. Those made defendants generally appeared and answered, but none of them contested the suits. Upon the last-mentioned consolidation being made, and on the same day, a final decree was entered for foreclosure of the mortgages and sale of the property, and adjusting the rights of the creditor, the Mercantile Trust Company. On the 3d of June, one week after the decree was entered, this petition was filed, praying for leave to intervene, in which it is stated, among other matters of complaint, that the Farmers' Loan & Trust Company had some time previously resigned its position of trustee under the several income mortgages of the Baltimore & Ohio Southwestern Railroad Company, and in its stead the Standard Trust Company of New York, Louis L. Stanton, and Frederick P. Voorheis had been appointed; that these last-named parties, as trustees of the income mortgages, had been made defendants in the bill to foreclose the first mortgage of said last-named company, and had consented to a decree the effect of which is "to cut out entirely the lien of the mortgages under which they claim to be the trustees." These are the mortgages which secure the petitioners' bonds. The petition alleges that the earnings of the Baltimore & Ohio Southwestern Railroad Company have been ample, if properly preserved and applied, to keep down the interest on its gold bonds secured by its first mortgage, and that the default in making payment thereof was unnecessary and was fraud-

ilently suffered in order to give ground for the foreclosure of the mortgage, and eliminating the income bonds, which had not been surrendered. It is further alleged that the resignation of the original trustee in the income mortgages, and the substitution of others in its place, to appear and bind by a consent decree the cestuis que trustent in a suit to be brought by the first trustee (now freed from that trust) as trustee in the underlying mortgage, was collusive and fraudulent as against the petitioner; that the scheme of the consolidation of the Baltimore & Ohio Southwestern Railroad Company and the Ohio & Mississippi Railway Company in providing for the holders of the bonds of the former who surrendered their bonds, and in not providing for or at any time making any payment of interest on the bonds not surrendered, was with the intent to defeat the rights of the petitioner; and that the course of the proceedings in the suits has been taken with a view to extinguish the bonds held by the petitioner, without satisfying them. It is alleged that the income mortgages are superior to all other claims upon the property that was of the Baltimore & Ohio Southwestern Railroad Company, other than the first mortgage given by that company, and that the property subject to those mortgages is of such value as to make the bonds of the petitioner valuable, after satisfying the superior lien. These constitute the substantial matters on which the petitioner relies in seeking to obtain an opportunity to defend the suits. Upon the hearing in the circuit court an offer was made in behalf of the defendants to extend to the petitioner and the other minority bondholders who had not come into the reorganization scheme the privilege given to those who surrendered their bonds. This offer was not accepted. The judge presiding in the circuit court directed the entry of the following order:

"This day this cause came on further to be heard upon the application of Franklin S. Buel for leave to file the intervening petition and answer attached to said application, and on the evidence adduced by the parties, including the offer made in open court at the hearing by the reorganization managers, and filed herein, and was argued by counsel, and the court, being fully advised in the premises, finds that all and singular the allegations of fraud and collusion made in said proposed intervening petition and answer are untrue; that said Baltimore & Ohio Southwestern Railway Company at the time of filing of the several bills of complaint herein was, and now is, insolvent; that the several defaults in the payment of interest as set forth in said bills of complaint were and are bona fide; and that said plan of reorganization is fair and just to all interests, including those of the said Buel, in case he should choose to avail himself thereof. Therefore it is ordered and adjudged that the said application be, and hereby is, denied. But it is ordered that the said Franklin S. Buel may, in case he refuse to accept said offer of said reorganization managers, file in this court within ten days, if he be so advised, an intervening petition, for the purpose only of setting up any claim he may have to participate in the distribution of the proceeds of the sale hereinbefore ordered."

This is the order from which the appeal is taken, and the question is whether it is appealable. It seems to be quite well settled that the granting leave to intervene in a case to which the petitioner is not a party is a matter addressed to the discretion of the court, to be exercised upon consideration of all the circumstances of the case. Among other things, the court will regard the sea-

sonableness of the application, and the extent to which those already parties to the suit may be injuriously affected by admitting the new party to assert his claims and have them litigated at that stage of the case. The question for the court will be whether the petitioner has slept upon his rights and unreasonably delayed his application. Another will be whether it will be more convenient that he litigate his rights upon an independent bill. And the court must necessarily, before granting leave, determine whether there is any reasonable ground for believing that the petitioner has any substantial interest to be protected,—not, indeed, conclusively whether such interest exists, but, pro hac vice, whether there is sufficient indication of it to justify the intervention. As settling the doctrine that the action of the circuit court in granting or refusing such an application is not subject to review upon appeal, reference is made to the following cases: In Ex parte Cutting, 94 U. S. 14, 24 L. Ed. 49, an application was made by Cutting and his associates, some of the stockholders of the Pacific Railroad Company, for a writ of mandamus to compel the allowance of an appeal by them from an order denying them the privilege of intervening, and from the final decree of foreclosure in a suit brought by the bondholders against the railroad company to foreclose a mortgage given by the company to secure their bonds. The petition of the stockholders for intervention alleged that the bonds which were secured by the mortgage were void, and were issued in fraud of the stockholders of the company, of which the petitioners were part. It was held that an appeal would not lie from the order refusing them leave to intervene and become parties, and it was said that such an application "is always addressed to the sound judicial discretion of the court." This rule was recognized by Judge Lurton in Toler v. Railroad Co. (C. C.) 67 Fed. 168, though the application was granted, in the circumstances of that case. In that case it was pointed out that the parties interested, but who were not made parties, would not be concluded by a decree impeachable for fraud and collusion by and between the actual parties to the suit. It is upon this ground, mainly, that the matter is left to the sound discretion of the court. In Lewis v. Railroad Co., 10 C. C. A. 446, 62 Fed. 218, one Lewis, as trustee in a mortgage to secure the bonds of a railroad company, brought a foreclosure suit; and Street, claiming some interest in the subject of the suit, prayed leave to intervene for his own protection. This was refused, and he applied to the circuit court of appeals for a mandamus requiring the allowance of an appeal. That court refused the writ, saying: "No right of the petitioner has been finally adjudicated by any of the orders of the court. Besides, this refusal of the circuit court to admit Street as a party is not an appealable order. It is in no sense a final judgment. It concludes no right,"—referring to the case of Ex parte Cutting, 94 U. S. 14, 22, 24 L. Ed. 49. In Hamlin v. Trust Co., 47 U. S. App. 422, 24 C. C. A. 271, 78 Fed. 664, 36 L. R. A. 826, which was a railway mortgage foreclosure suit, as well as one by general creditors, consolidated, Hamlin and his associates, being the owners of preferred stock in the railway com-

pany, which they alleged would be jeopardized without their presence as parties, filed a petition for leave to intervene and file an answer and cross bill. The court granted the petition and leave to file the proposed answer and cross bill, but it was added to the order that it was subject to the right of the complainants to move to strike them from the files. This reservation was due to the fact that the complainants had not fully examined the answer and cross bill, and requested time to do so. Subsequently, on motion made, under the leave reserved, the court reserved its decision until the final decree, wherein it was ordered that the petitioners be denied the right to intervene. The case came here on their appeal, and it was held that, while the question of admitting the intervention was entirely within the discretion of the court, yet, having been once admitted, it was erroneous to deny them the privilege of making any defense. The controlling fact in that decision was that the petitioners had been admitted as parties, and would be bound by the decree. The question whether the pleading which they had filed was proper was one relating to the subsequent procedure, and the kind of defense they would be permitted to make. In the same case, reported under the title of Toledo, St. L. & K. C. R. Co. v. Continental Trust Co., 36 C. C. A. 155, 95 Fed. 497, which came here on a subsequent appeal, one Rose, who was also a preferred stockholder, had, without leave of the court, filed what purported to be a cross bill and answer. He was not recognized as a party, and the suit went on to decree. Conceiving himself aggrieved, he appealed. It was held by this court that, conceding, for the purpose of the decision, his filing an answer and cross bill might be treated as an application for leave to intervene, and the action of the court as a denial of it, still, as the court had never granted him leave, and had not recognized him as an actor in the suit, he had no standing on which to claim an appeal from the refusal to admit him; and, of course, it followed from that that, not being a party, he could not appeal from the decree. His appeal was accordingly dismissed. In the present case, as in that, the appeal extends to the final decree in the case. But, from the decision that he never became a party, it necessarily follows that his appeal is wholly nugatory.

For the appellant it is urged that the order in question finds and declares certain facts touching the merits of the main controversy, and that this cannot rightfully be done except upon a final hearing after proofs are taken. It is true, the language of the order indicates that the court passed upon the main facts which the petitioner seeks to litigate. But this finding is only for the purposes of the motion. The final determination of such facts was not then submitted to the court. The construction and effect of the language employed are affected by the occasion and purpose, and, when read with reference to them, it is known that there was no intention of passing final judgment upon the facts, and that no such effect can be lawfully attributed to the order. And, so construed, there is no ground for the contention made by counsel for the petitioner, in their supplemental brief, that the court in making this order treated

him as a party to the suit. It follows that the appeal cannot be entertained, for want of jurisdiction. It is accordingly dismissed, with costs.