SUNSET TELEPHONE & TELEGRAPH CO. v. CITY OF EUREKA et al.

(Circuit Court, N. D. California.   July 18, 1902.)

No. 13,248.

1. COMMERCE (§ 28*) — INSTRUMENTALITIES OF INTERSTATE COMMERCE — TELEGRAPHS AND TELEPHONES—"INTERSTATE COMMERCE."

Communication by telegraph or telephone between points in different states is "interstate commerce."

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 22; Dec. Dig. § 28.*

For other definitions, see Words and Phrases, vol. 4, pp. 3724–3731.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. TELEGRAPHS AND TELEPHONES (§ 10*)—RIGHT TO USE STREETS—CALIFORNIA STATUTE.

The Broughton act (St. Cal. 1901, p. 265, c. 103), which provides conditions on which franchises may be granted by municipalities for the use of their streets for various purposes, but which excepts, inter alia, "telegraph or telephone lines doing an interstate business," does not require a telephone company doing an interstate business to obtain the consent of a city for the construction or maintenance of its lines in the streets, although they are used for local and intrastate business also.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 6; Dec. Dig. § 10.*

Rights of telegraph and telephone companies to use streets, see note to Southern Bell Tel. & Tel. Co. v. City of Richmond, 44 C. C. A. 155.]

In Equity. On motion to dissolve restraining order.
See, also, 122 Fed. 960.

E. S. Pillsbury, for plaintiff.
J. H. G. Weaver and A. J. Monroe, for defendants.

BEATTY, District Judge. This is a suit brought by the Sunset Telephone & Telegraph Company, a corporation, against the city of Eureka, a municipality of the state of California, and the officials of that city, for an injunction to restrain and prevent their interference with the erection and maintenance of its telephone and telegraph lines, with the necessary appliances and appurtenances, in the streets of said city, and to prevent its officials from interfering with or removing the same, or instituting suits or prosecutions against the company or its agents, to prevent the construction of its lines, or the performance of its usual and ordinary business as a telephone and telegraph company, or from the collection of such rates for services rendered to subscribers as are now established. Upon filing the bill a restraining order was issued as prayed for, and an order to show cause why the same should not be continued pendente lite, and the defendants have appeared and moved to dissolve this restraining order.

It is charged in the bill that the complainant has constructed, owns, and is operating certain telephone and telegraph lines in the states of California, Oregon, Washington, Idaho, and Nevada, by which it transmits both telegraph and telephone messages and communications between these states, as also between the various cities and towns of each state, upon the payment of certain rates, and that such messages and communications are sent by its patrons from the city of Eureka, and by them also received in said city. While it is not claimed by complainant that all the patrons and subscribers of the company in the city of Eureka and doing business on its lines actually send and receive messages and communications to and from points outside of the state, it is asserted that some of them do make such use of its instruments and lines, and that facilities are afforded for so doing to all such patrons and subscribers for telephones.

It appears that on September 4, 1897, complainant duly accepted the provisions of the act of Congress approved July 24, 1866 (Act July 24, 1866, c. 230, 14 Stat. 221), entitled "An act to aid in the construction of telegraph lines and to secure to the government the use

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the same for postal, military and other purposes," and is included in the list of companies published by the Postmaster General, for which a schedule of rates for government business has been established by that official. It also appears that, for several years before the present trouble arose between complainant and the city of Eureka, the company had, from time to time, by the permission of the city and in compliance with its regulations as to the method of construction, erected lines in various streets, and at the time of bringing this suit was operating a telephone exchange there, with about 750 subscribers; that prior to this suit the city council had passed certain ordinances regulating the manner of constructing telephone and telegraph lines in Eureka, which complainant had always complied with, and alleges its willingness to still so comply, or with any other reasonable regulations in that respect. ·

The principal causes leading to this suit were the passage of two ordinances by the city council attempting to compel the company to maintain separate lines for its interstate business, and to procure a franchise from the city for the erection of lines used to transact local business. The first of these, No. 285, adopted January 27, 1902, is entitled an ordinance "regulating telephone, telegraph and telephone poles and wires used in doing interstate business in the city of Eureka," and declares it to be unlawful for any person to erect or maintain any poles or wires in the streets of the city used for doing an interstate telephone or telegraph business, or both, without first obtaining permission therefor from the city council, and complying with the provisions of said ordinance touching such erection and maintenance. It provides, further, among other things, that it shall be unlawful to use any poles or wires, the permission to erect or maintain which has been granted under the provisions thereof, for any purpose or purposes other than interstate telephone or telegraph, unless a franchise has been first obtained for doing an intrastate or local business within the city. The second, No. 286, adopted on the same day, is entitled an ordinance "regulating telephone and telegraph and telephone poles and wires used in doing an intrastate telephone and telegraph business and local telephone business within the city of Eureka," and declares it to be unlawful to erect or maintain poles or wires in the streets to be used in doing intrastate telephone or telegraph business or local business in the city of Eureka, without first obtaining a franchise for so doing, in accordance with the laws of the state and the charter of the city, and prescribes penalties for noncompliance therewith. About the time of the adoption of these ordinances another ordinance was passed, reducing the rates to be charged by the complainant in the city to an extent alleged to be unremunerative and prohibitory, and an injunction is also sought against its enforcement. Charges of fraud are also made concerning the motives of certain members of the council in securing the passage of these ordinances, but these are denied by affidavits read upon the hearing, and that issue will not be considered in passing upon this motion.

Counsel for defendants did not insist upon the hearing that complainant should be prevented from collecting its present rates before the trial of the case, and the principal question left for decision upon

this motion is as to the right of complainant to use and occupy the streets of the city of Eureka, to set poles and string wires, with all necessary and proper appliances and appurtenances for the purposes of its business, without first procuring a franchise from the city permitting such use and occupation. Counsel for the city have contended that under its charter and the laws of the state such a franchise is requisite, and that the city is entitled to the payment of a percentage upon the gross annual receipts of the company, as provided by the law of the state known as the "Broughton act" (St. of Cal. 1901, p. 265, c. 103). No provision of the charter of Eureka has been pointed out under which a franchise may be granted by the city or be required by it, in order to enable a corporation like complainant to erect lines for a telephone or telegraph business, and the liability, if any, of complainant to be compelled to procure such a franchise, arises under this act of 1901. In any event it would be presumed that the charter of the city is subordinate to a general law on the subject. Section 1 of the act of 1901 reads as follows:

"Section 1. Every franchise or privilege to erect or lay telegraph or telephone wires, to construct or operate street railroads upon any public street or highway, to lay gas pipes for the purpose of carrying gas for heat and power, to erect poles or wires for transmitting electric heat and power along or upon any public street or highway, or to exercise any other privilege whatever hereafter proposed to be granted by boards of supervisors, boards of trustees, or common councils, or other governing or legislative bodies of any city and county, city or town within this state, except steam railroads and except telegraph or telephone lines doing an interstate business, and renewals of franchise for piers, chutes or wharves, shall be granted upon the conditions in this act provided, and not otherwise."

It is contended on behalf of complainant that, as all its lines are doing both an interstate telephone and telegraph business, they are not within the operation of the act. It is shown that telegraph messages are sent over these lines from persons in this state to persons in other states, and received from the latter; also that telephone communications to and from the state are sent and received over the lines by some of the subscribers, though not by all, but that such use is open to any person renting a telephone instrument of the company, or applying to any of its public exchanges for telephone service; that all such services are rendered by complainant on the payment of established rates. It has been repeatedly held that such intercourse by telegraph and telephone messages and communications between different states is interstate commerce. W. U. Tel. Co. v. Pendleton, 122 U. S. 356, 7 Sup. Ct. 1126, 30 L. Ed. 1187; Muskogee Nat. Tel. Co. v. Hall, 118 Fed. 382, 55 C. C. A. 208; In re Penn. Tel. Co., 48 N. J. Eq. 91, 20 Atl. 846, 27 Am. St. Rep. 462; N. W. Tel. Co. v. Chicago, 76 Minn. 334, 79 N. W. 315.

It would seem that the Legislature of California had in view the law as declared by these decisions when the act of 1901 was passed, and that the lines of complainant are, on this account, exempted from its provisions. If complainant could be compelled to apply for a franchise as a condition precedent to doing business, the granting body might refuse its application, and instruments of interstate commerce be thereby prevented from transacting business. Conditions might also

be attached to such use which might impair or in effect work a denial of its exercise. In re Wm. Henry Johnston, 137 Cal. 115, 120, 69 Pac. 973.

The Supreme Court of California had already declared, when this act was passed, that in the statutes of the state the word "telegraph" included the telephone. Davis v. Pac. States T. & T. Co., 127 Cal. 312, 57 Pac. 764, 59 Pac. 698. The same construction has been placed upon similar statutes in numerous other instances. Wisconsin Tel. Co. v. Oshkosh, 62 Wis. 32, 21 N. W. 828; San Antonio Ry. Co. v. Southwestern T. & T. Co., 93 Tex. 313, 55 S. W. 117, 49 L. R. A. 459, 77 Am. St. Rep. 884; People's T. & T. Co. v. Turnpike Road, 199 Pa. 411, 49 Atl. 284; Wisconsin Tel. Co. v. Sheboygan, 114 Wis. 505, 90 N. W. 441; City of Rochester v. Bell Tel. Co., 52 App. Div. 6, 64 N. Y. S. 804; Michigan Tel. Co. v. Benton Harbor, 121 Mich. 512, 80 N. W. 386, 47 L. R. A. 104; Summit Township v. Telephone Co., 57 N. J. Eq. 123, 41 Atl. 146; Telephone Co. v. Railway Co. (Tex. Civ. App.) 52 S. W. 106. This court will follow the interpretation placed upon a statute by the highest court of the state in which it was enacted.

Complainant has also invoked section 536 of the Civil Code of California, and claims the right to construct its lines thereunder, and cites Davis v. Pac. States T. & T. Co., 127 Cal. 312, 57 Pac. 764, 59 Pac. 698, and other cases before noticed in that connection. Support is found for this claim in Abbott v. Duluth (C. C.) 104 Fed. 833, Northwestern Tel. Co. v. Minneapolis, 81 Minn. 140, 83 N. W. 527, 86 N. W. 69, 53 L. R. A. 175, and other well-considered cases.

Complainant further contends that as the lines which it constructed prior to the commencement of this suit were erected under ordinances of the city permitting such erection, and particularly Ordinance No. 260 (Exhibit B to the bill), passed March 18, 1901, expressly accepting all pole lines erected by the company to that date, its relations with the city became contractual, and cannot be annulled by any subsequent action of that body, and cites in support of this proposition: Abbott v. City of Duluth (C. C.) 104 Fed. 837; Telephone Co. v. Minneapolis, 81 Minn. 140, 83 N. W. 527, 86 N. W. 69, 53 L. R. A. 175; Sunset T. & T. Co. v. Medford (C. C.) 115 Fed. 202; New Orleans v. Southern Tel. Co., 40 La. Ann. 41, 3 South. 533, 8 Am. St. Rep. 502; Wisconsin Tel. Co. v. Sheboygan, 114 Wis. 505, 90 N. W. 441; Northwestern Tel. Co. v. Minneapolis, 81 Minn. 140, 83 N. W. 527, 86 N. W. 74, 53 L. R. A. 175; Chesapeake Tel. Co. v. Baltimore, 90 Md. 638, 45 Atl. 446—which seem to sustain this contention. It is also urged, further, on behalf of complainant, that, having lawfully established its lines in that city, it has the right, as an incident to this circumstance, to extend such lines, with all necessary and proper appliances and appurtenances, to accommodate the increasing demands for telephone service, according to the doctrine announced in Abbott v. Duluth (C. C.) 104 Fed. 839, and Mich. Tel. Co. v. St. Joseph, 121 Mich. 502, 80 N. W. 383, 47 L. R. A. 87, 80 Am. St. Rep. 520. But, under the view taken of the act of 1901, it is not necessary to pass upon these points.

Of course, a telegraph and telephone corporation engaged in conducting an interstate business would be required to conform to all rea-

sonable police regulations adopted by municipal authorities as to the manner of constructing and maintaining its lines. This proposition is conceded by counsel for complainant, and it is pointed out that this company has always discharged its obligations to the city of Eureka in this respect, and has expressly alleged in the bill that it is willing to do so hereafter. This protects the public against any misuse of the streets.

The motion to dissolve the restraining order is denied.