## POWERS, AUDITOR GENERAL OF THE STATE OF MICHIGAN, v. DETROIT, GRAND HAVEN AND MIL-WAUKEE RAILWAY COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF MICHIGAN.

No. 394.  Argued February 26, 1906.—Decided April 16, 1906.

Where a railroad company is reorganized under a special act of the legislature but no new corporation is chartered a statutory exemption from taxation is not destroyed.

A State may, through its legislature, make a valid contract as to taxation with a corporation which the latter can enforce; and this court is not, under the rule generally applicable as to the binding effect of decisions of the Supreme Court of the State construing its statutes, concluded by

the decisions of that court as to whether such a contract exists, the extent of its terms and whether any subsequent law has impaired its obligation.. But where the Supreme Court of the State sustains the validity of the statute from which a contract is claimed, this court follows that decision and determines what the contract is.

Provisions in a state statute for a special rate of taxation in respect to a particular corporation, made with a view of inducing large expenditures and the completion of an unfinished road of great public importance, and which are formally accepted and complied with, amount to a contract within the protection of the impairment clause of the Federal Constitution, and no other tax can be imposed on the corporation.

An annual tax of one per cent imposed by a special statute on the capital stock of a particular corporation to be paid in lieu of all other taxes except for penalties imposed thereupon and prescribed to be estimated each year on the last annual report of the corporation, held, under the circumstances of this case, to be a tax upon the property of the corporation, and not a tax upon the shares of stock held by the stockholders.

THIS case, which is a suit brought by the appellee in the Circuit Court of the United States for the Western District of Michigan, while involving the validity of the railroad tax law of the State of Michigan, acts 1901, p. 236, No. 173, recently considered by this court (ante, p. 245), involves the further question of the existence and scope of an alleged contract in respect to taxation. The Detroit and Pontiac Rail Road Company was chartered by the legislature of the Territory of Michigan, March 7, 1834, the Oakland and Ottawa Rail Road Company by the legislature of the State of Michigan, April 3, 1848, Laws 1848, p. 351. By an act of February 13, 1855, Laws of 1855, p. 305, the Detroit and Pontiac Rail Road was authorized to change its name to the Detroit and Milwaukee Railway Company, to purchase all the rights, property and franchises of the Oakland and Ottawa Rail Road Company for the building and operating a continuous line of road from Detroit to Lake Michigan, and the purchase and sale thus provided for was duly effected. Section 9 of this act provided that—

"* * * the said company shall, on or before the first day of July, pay the state treasurer an annual tax of one per cent on the capital stock of said company paid in, which tax shall be in lieu of all other taxes, except for penalties imposed upon said company

by its act of incorporation, or any other law of this State.  The said tax shall be estimated upon the last annual report of said corporation."

Since 1850 the state constitution has contained these provisions:

"Corporations may. be formed under general laws but shall not be created by special act except for municipal purposes. All laws passed pursuant to this section may be amended, altered or repealed.  But the legislature may, by a vote of two-thirds of the members elected to each house, create a single bank with branches."   Section 1, art. XV.

"The legislature shall pass no law altering or amending any act of incorporation heretofore granted, without the assent of two-thirds of the members elected to each house; nor shall any such act be renewed or extended.  This restriction shall not apply to municipal corporations."   Section 8, art. XV.

In 1860 certain mortgages on the road were foreclosed and the company reorganized, and again in 1878 the road with its appurtenances and franchises was sold upon mortgage foreclosure and again reorganized as the Detroit, Grand Haven and Milwaukee Railway Company.  These foreclosures and reorganizations took place under the authority of act No. 96, p. 252, Laws of 1859.

On the hearing in the Circuit Court it was held that section 9, above quoted, created a contract between the State and the company which prevented the enforcement against it of the railroad tax. law, and a decree was entered accordingly, 138 Fed. Rep. 264, from which decree the state auditor appealed directly to this court.

Mr. *Timothy E. Tarnsey,* with whom *Mr. John E. Bird,* Attorney General of the State of Michigan, was on the brief, for appellant:

There was also a separate brief by *Mr. Roger Irving Wykes,* on which were *Mr. John E. Bird,* Attorney General of the State of Michigan, *Mr. Charles A. Blair* and *Mr. Loyal E. Knappen.*

The act of 1834, the original charter, is silent upon the subject of taxation; hence the power to tax remained unfettered: *Providence Bank* v. *Billings*, 4 Pet. 514.

It is denied that the railroad company obtained any new contract rights by the legislation of 1855. That act merely changed the name of the Detroit & Pontiac Rail Road Company to the Detroit & Milwaukee Railway Company, and authorized such company to purchase the property, rights and franchise of the Oakland & Ottawa Rail Road Company, and then declared in section 4, "in case of said purchase or consolidation, the said Detroit & Milwaukee Railway Company shall hold the whole of said road and property, subject in all respects to the original charter of the Detroit & Pontiac Rail Road Company, as amended from time to time," etc.

To ascertain the extent of the powers, privileges and franchises which may be exercised by the Detroit & Milwaukee Railway Company, the original charter or act of 1834 must be searched, and amongst the powers, privileges and franchises there conferred is not found the immunity from taxation. If the legislature of 1855 intended that the exemption or immunity from taxation should become a part of the charter of said company and a contract between the State and it, it would not have confined the powers, privileges and franchises to the original charter, but would have conferred authority to exercise the powers, privileges and franchises therein and herein conferred. No language is contained in the ninth section by which the State binds itself to continue the rate of taxation therein imposed, during the continuance of the charter by the railway company or for any definite time.

The legislature of Michigan did not possess the power to enter into a contract to exempt from taxation in 1855 under the constitution of 1850. *Walcott* v. *People*, 17 Michigan, 81; *Gulf & Ship Island Ry. Co.* v. *Hewes*, 183 U. S. 71.

The constitution of 1850 provided for formation of corporations under general laws and for the amendment and repeal of all laws passed pursuant to it. The provisions of the

act of 1855 must be read in connection with the constitution. *Planters' Fire & Marine Ins. Co.* v. *Tennessee*, 161 U. S. 193.

The tax provision in the act of 1855 was a mere gratuity and subject to repeal. *Tucker* v. *Ferguson*, 22 Wall. 527; *West Wisconsin Ry. Company* v. *Supervisors*, 93 U. S. 595; *Turnpike Co.* v. *Illinois*, 96 U. S. 63; *Philadelphia R. R. Co.'s Appeal*, 102 Pa. St. 123; *Attorney General* v. *Joy*, 55 Michigan, 94.

This court will decide for itself independently of the state courts whether there is a contract or whether its obligation is impaired. If the decision of that question requires a construction of state constitutions and laws, this court is not necessarily governed by previous decisions of a state court upon the same or similar points except where they have been so firmly established as to constitute a rule of property. *Jefferson Branch Bank* v. *Skelly*, 1 Black, 436; *Bridge Proprietors* v. *Hoboken Co.*, 1 Wall. 116; *L. N. R. R. Co.* v. *Palmes*, 109 U. S. 244; *Vicksburg S. & P. R. Co.* v. *Dennis*, 116 U. S. 665; *Mobile & Ohio Ry. Co.* v. *Tennessee*, 153 U. S. 486; *Shelby County* v. *Union & Planters' Bank*, 161 U. S. 149.

If the immunity from taxation contained in the act of 1855 is held to be a contract with the railway company named therein such immunity did not pass to the complainant. *Morgan* v. *Louisiana*, 93 U. S. 217.

The exemption from taxation is a personal right and not a franchise essential to the operation of a railroad, hence without express statutory direction it does not pass to the purchaser of the road at foreclosure. *Railroad Co.* v. *Gaines*, 97 U. S. 711; *Railway Co.* v. *Commissioners*, 103 U. S. 4; *Railroad Co.* v. *Hamblen County*, 102 U. S. 274; *Wilson* v. *Gaines*, 103 U. S. 421; *Memphis R. R. Co.* v. *Commissioners*, 112 U. S. 617; *Chesapeake &c.* v. *Miller*, 114 U. S. 184; *Pickard* v. *East Tennessee &c. R. R. Co.* 130 U. S. 641; *Mercantile Bank* v. *Tennessee*, 161 U. S. 164.

The franchise to be a corporation was neither mortgaged nor sold, nor could it have been. *Memphis &c. R. R. Co.* v. *Berry*,

112 U. S. 609; *Julian* v. *Central Trust Co.*, 193 U. S. 93; *People* v. *Cook*, 148 U. S. 397.

*Attorney General* v. *Joy*, 55 Michigan, 94, is not in conflict with this view. That involved whether the Detroit, G. H. & Milwaukee existed as a corporation, not whether it was the same corporation as the Detroit & Pontiac or the Detroit & Milwaukee.

The foreclosure proceedings of 1860 did not extinguish the corporate existence of the Detroit & Milwaukee Railway Company, nor did it continue that same existence in the new purchasers, but it continued as a separate and distinct entity for such purposes as the stockholders thereof might lawfully use it for, and it was in legal effect nothing more nor less than a surrender or abandonment of the old charter by the corporators to the State and a grant *de novo* of a similar charter to the purchasers, as was held in *Memphis &c. R. R. Co.* v. *Berry*, 112 U. S. 609.

Foreclosure sale under mortgage of corporate property conveys merely a right to organize under existing laws, and such organization is a distinct entity, not acquiring original corporation's immunity from taxation. Section 1, art. 15 of the Michigan constitution declares that corporations may form under general laws but shall not be created by special act except for municipal purposes. All laws passed pursuant to this section may be amended, altered or repealed. When the present complainant and its immediate predecessor acquired rights in this railroad, this constitutional provision was in force. *Memphis &c. R. R. Co.* v. *Berry*, 112 U. S. 609; *St. Louis &c. Ry. Co.* v. *Berry*, 113 U. S. 476; *Dow* v. *Beidelman*, 125 U. S. 689; *People* v. *Cook*, 148 U. S. 397. See also *Northern Central R. R. Co.* v. *Maryland*, 187 U. S. 258.

Section 9 of the act of 1855 relates only to taxation upon capital stock paid in, and does not assume to exempt or limit taxation upon other property of the company.

There must be no doubt or ambiguity in the language used upon which the claim to exemption is found. *Phœnix F. & M.*

*Ins. Co.* v. *Tennessee*, 161 U. S. 174; *Chicago &c.* v. *Guffey*, 120 U. S. 596; *Farrington* v. *Tennessee*, 95 U. S. 687; *Tennessee* v. *Whitworth*, 117 U. S. 129.

The capital stock and the shares of stock in the hands of the shareholders may both be taxed and it is not double taxation. *Van Allen* v. *Assessors*, 3 Wall. 573; *People* v. *Tax Commissioners*, 4 Wall. 244.

The term capital stock is defined in *Burrall* v. *Bushwick Railroad Company*, 75 N. Y. 211, as that money or property which is put in a single corporate fund by those who by subscription therefor become members of a corporate body. See also *Berry* v. *Merchants' Exchange Company*, 1 Sandf. 307; *State* v. *Morristown Fire Association*, 3 Zabr. 195; *Bailey* v. *Clark*, 21 Wall. 286; *Tradesmen's Pub. Co.* v. *Knoxville Car Wheel Co.*, 95 Tennessee, 634.

But the capital stock is not the same thing as the property of the corporation. *Commercial F. Insurance Co.* v. *Board of Revenue*, 99 Alabama, 4; *Henderson Bridge Co.* v. *Commonwealth*, 99 Kentucky, 623; Beach on Priv. Corp. 426; *Central R. &c. Co.* v. *Wright*, 164 U. S. 327; *Memphis &c. R. Co.* v. *Gaines*, 97 U. S. 697; *State* v. *Morristown F. Assoc.*, 23 N. J. L. 195; *Berry* v. *Merchants' Ex. Co.*, 1 Sandf. Ch. 307; *Quincy R. Bridge Co.* v. *Adams County*, 88 Illinois, 621.

The property of a corporation fluctuates, and may be greater or less than the original capital invested, according as the business has resulted in a profit or a loss. But the capital stock remains fixed and unaffected by the accidents of business. *Farrington* v. *Tennessee*; *Commercial Fire Insurance Co.* v. *Board of Revenue*; *State* v. *Morristown F. Association, supra*.

The sum total of all the assets of a corporation is sometimes said to constitute a capital, but the term " capital " is here used in its economic sense as " wealth in use, " and not as synonymous with capital stock, in which sense it is also sometimes used. *Bank of Commerce* v. *Tennessee*, 104 U. S. 495; *State* v. *Norwich &c. R. Co.*, 30 Connecticut, 290; *Ohio &c. R. Co.* v. *Weber*, 96 Illinois, 443; *Pacific Hotel Co.* v. *Lieb*, 83 Illinois,

602; *Traders &c. Insurance Co.* v. *Brown,* 142 Massachusetts, 403; *People* v. *Wemple,* 78 Hun, 67; *People* v. *Knight,* 75 App. Div. N. Y. 164; *Howland* v. *Edmonds,* 24 N. Y. 315; *People* v. *Tax &c. Commissioners,* 23 N. Y. 219; *State* v. *Cheraw &c. R. Co.,* 16 S. Car. 528; *Tradesmen's Pub. Co.* v. *Knoxville Car Wheel Co.,* 95 Tennessee, 634; *State Bank* v. *Milwaukee,* 18 Wisconsin, 284.

Undivided profits or surplus form no part of the capital stock, though they do form part of the general capital or assets of the corporation. *Farrington* v. *Tennessee,* 95 U. S. 686; *Hightower* v. *Thornton,* 8 Georgia, 486 (52 Am. Dec. 412); *People* v. *Wemple,* 78 Hun, 63; *Berry* v. *Mer. Exch. Co.,* 1 Sandf. Ch. 307; *Williams* v. *Western U. Tel. Co.,* 93 N. Y. 187; *Sun Mut. Ins. Co.* v. *New York,* 8 N. Y. 241; *State* v. *Bank of Commerce,* 95 Tennessee, 221; *State Bank* v. *Milwaukee,* 18 Wisconsin, 284.

Money borrowed by the corporation forms no part of its capital stock. *State* v. *Cheraw R. Co.,* 16 S. Car. 528. The franchise of the corporation constitutes no part or element of its capital stock. *People* v. *Coleman,* 34 Am. & Eng. Corp. Cas. 223.

A corporation is not limited in its ownership of property to the amount fixed as its capital stock. *State* v. *Morristown F. Assoc.,* 23 N. J. L. 195; *Berry* v. *Merchants' Exch. Co.,* 1 Sandf. Ch. 307.

Upon the other hand the amount of capital stock is limited to the amount actually subscribed for and issued, and is not necessarily the amount named in the articles of association, which latter is merely the authorized capital stock. *Fisk* v. *Chicago R. Co.,* 36 How. Pr. (N. Y.) 22; *Pratt* v. *Munson,* 17 Hun, 475; *Green Point Sugar Company* v. *Whitin,* 69 N. Y. 338; *Commonwealth* v. *Lehigh Ave. R. Co.,* 129 Pa. St. 414; *Philadelphia* v. *Ridge Ave. Pass. R. Co.,* 102 Pa. St. 190; *Philadelphia* v. *Philadelphia &c. R. Co.,* 52 Pa. St. 177.

The accumulated surplus of a corporation is defined to be "the fund the corporation has in excess of its capital stock, after

payment of its debts." State v. Parker, 35 N. J. L. 578; State v. Utter, 34 N. J. L. 480; State v. Yard, 42 N. J. L. 359.

In view of the clear distinction between the stock in the hands of the shareholders, the capital stock, the property of the corporation, the surplus over and above the capital stock and the franchise, each may be regarded as separate and distinct classes of property, and the exemption, if one exists, be no further than the language clearly imports, viz., upon the amount of the capital stock paid in.

But it is not the capital stock the State seeks to tax; it is the property of the railroad company; appraised at $6,195,000, while the amount of capital stock paid in, as shown by the bill of complaint is the sum of $2,517,140, showing property of the value of $3,677,860 in excess of the amount of capital stock paid in.

Whether this excess is the result of accumulated earnings, or property produced by the sale of bonds, does not appear, but it is quite clear that it is a surplus and is the property of the corporation and subject to taxation, and it does not appear that any part of said capital stock paid in has been converted into the property taxed. If it did so appear, then the exemption could only extend to the amount of the capital stock paid in.

Mr. H. Geer and Mr. L. C. Stanley for appellee:

Section 9, act 140, Laws of 1855, is a part of the complainant's charter, and its repeal by act 5, Laws of 1900, was in violation of the contract clause of the Constitution of the United States, in that it impaired the obligation of the contract between complainant and the State of Michigan, and therefore complainant is not subject to taxation under act 173, Laws of 1901. Bank v. Knoop, 16 How. 369; McHenry v. Alford, 168 U. S. 651; Stearns v. Minnesota, 179 U. S. 223; Railroad Co. v. St. Louis County, 179 U. S. 302; Bank v. Parker, 192 U. S. 73.

The charter is a contract protected by the Constitution both

of the United States and of the State. *Greenwood* v. *Freight Co.*, 105 U. S. 13.

A territorial legislature has all the power of a state legislature, except as limited by the Constitution and by the act of Congress. *Walker* v. *Southern Pac. Ry.*, 165 U. S. 593.

A distinction between an exemption from taxation contained in a special charter and general encouragement to all persons to engage in a certain class of enterprise is pointed out in *East Saginaw Co.* v. *East Saginaw*, 13 Wall. 373; *Wisconsin & Michigan Ry. Co.* v. *Powers*, 191 U. S. 379.

The test of a covenant, according to the court in the *Wisconsin & Michigan* case, is that the consideration should purport to be the motive for the promise, and the promise must purport to be the motive for the consideration. This test is met and satisfied in this case. The State proposed the terms on which it was to get a completed railroad highway, and these terms were accepted, and by these terms some millions of money were expended in providing that highway. See *New Jersey* v. *Yard*, 95 U. S. 114.

In the present case, the legislature was making a contract and not a law, because, first, the statute was passed with reference to this case alone, and not generally as to all; second, acceptance was provided for and doubtless was made.

The tax limit is part of the charter, and is not such a contract under the state constitution as to make it subject to amendment. That it is a contract appears from its form and the circumstances under which it was made; that is to say, the need and desire on the part of the people in 1855 to have a railroad across the State.

No new corporation resulted from the merger.

The act itself speaks of the transaction as merger, consolidation or purchase, but it is essentially a merger. No new corporation is created; but the old Detroit & Pontiac Company is given a new name. The period of its existence is not prolonged. The name is not a controlling circumstance. A new corporation might have been created with the old name or a

new name given to the old corporation, as was done here.   But it is significant that the act declares that the Detroit & Pontiac Company shall be known hereafter by the name of the Detroit & Milwaukee Railway Company.   No new company purchases or absorbs the property of both companies, but one company purchases all the property of the other.   The charter of the one continues; its functions continue; new stockholders are admitted.   In short, "the Oakland & Ottawa Rail Road Company shall thereupon become merged in the Detroit & Milwaukee Railway Company."   The case is covered by *Keokuk & Western Railroad* v. *Missouri*, 152 U. S. 301.   No new stock is created.   There is no new property to be represented by stock.   See also *Tennessee* v. *Whitworth*, 117 U. S. 137; *Tomlinson* v. *Branch*, 15 Wall. 460; *Central R. R.* v. *Georgia*, 92 U. S. 665; *Wilmington &c. R. R.* v. *Alsbrook*, 146 U. S. 279.

The act of 1855 is not repugnant to the constitution.   *Attorney General* v. *Joy*, 55 Michigan, 94.   And the Federal courts choose to be bound by such decision.   *Pennsylvania College*, 13 Wall. 190; *Cromwell* v. *County of Sac*, 94 U. S. 359, 365.

The statute of 1901 increasing the rate of tax impairs the obligation of the contract.   *Pingree* v. *Michigan Central*, 118 Michigan, 314; *New Jersey* v. *Yard, supra; Pearsall* v. *Great Northern R. R.*, 161 U. S. 663.

This appellee is the identical Detroit & Pontiac Rail Road Company, and entitled to enjoy charter rights and immunities both of that company and of the Detroit & Milwaukee Railway Company under the amendment of 1855.   No new corporations resulted from foreclosure.

A grant of corporate existence, that is, of a new corporate existence, is never implied.   In the construction of the statute every presumption is against it.   *Memphis Railroad Company* v. *Commissioners*, 112 U. S. 609, 618; *Central Railroad & Banking Co.* v. *Georgia*, 92 U. S. 665, 670.   Unless restricted by constitutional provisions the legislature has supreme power with reference to corporations either in endowing them with life or

continuing their existence. *Williamette Company* v. *Bank of B. C.,* 119 U. S. 191; *Morris* v. *Railroad,* 67 Texas, 692, 700. Corporate life is not cut short by insolvency. *Chemical Bank* v. *Hartford,* 161 U. S. 4. A reorganization is not necessarily the organization of a new corporation. 2 Clark & Marshall, Private Corporations, 974. The enlargement of the powers of a company is not by any means necessarily the creating of a new corporation. *Broughton* v. *Pensacola,* 93 U. S. 266.

. The act of 1901 which assumed to enact that this and other like companies, in whose chartered history there had been a foreclosure and sale, should thereby become extinct as corporations and get new and different life under the general statute, or should be deemed to have done so, impaired the charter tax limit. *Wallace* v. *Loomis,* 97 U. S. 154.

The charter was construed by the legislature as well as by the courts prior to the act of 1901. See act of 1861 reaffirming tax limitation. This legislative construction will be followed. *Gelpcke* v. *Dubuque,* 1 Wall. 175; *Southern Pacific R. R.* v. *Orton,* 32 Fed. Rep. 478; *Webster* v. *Cooper,* 14 How. 504.

This court will follow the decision of the Supreme Court of the State; and by reason of the long acquiescence in the decision, will hold the State estopped from claiming the contrary. *Wilkes Co.* v. *Coler,* 180 U. S. 506; *Burgess* v. *Seligman,* 107 U. S. 20.

The terms "capital stock paid in," as used in the charter tax limit, extend to and mean the corporate property in which that stock is invested. The company is to pay this tax. The words "paid in" signify the capital amassed in the treasury. There is no thought in this language of the *shares* in the hands of shareholders. It is capital collected, not capital distributed among the shareholders. This extends to the corporate property represented by the capital and in which the capital is invested. *Railroad Co.* v. *Gaines,* 97 U. S. 697, 707; *D., L. & W. Ry. Co.* v. *Pennsylvania,* 198 U. S. 354.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

Many questions which might otherwise be perplexing are settled by the decision of the Supreme Court of Michigan in *Attorney General* v. *Joy et al.*, 55 Michigan, 94. That was an information brought by the Attorney General in the Supreme Court of the State, charging the defendants with claiming and usurping the corporate rights and franchises of the Detroit, Grand Haven and Milwaukee Railway Company. The act of 1855 was sustained, notwithstanding some alleged defects in its passage, and it was decided that it did not create a new corporation but simply authorized the old territorial corporation, the Detroit and Pontiac Rail Road Company, to change its name and extend its line of road, and, further, that this act in no respect conflicted with sections 1 and 8, article XV, of the state constitution. The court also sustained the act of 1859, under which the foreclosures took place, and held that by them no new company was chartered, that there was simply a reorganization and continuance of the old company.

The latter act provides that upon certain conditions new stock shall be issued in lieu of the old stock, the old officers of the company superseded, "and the new stockholders and officers shall, in the law, be deemed and taken to be the stockholders and officers of said corporation, the charter and all laws appertaining thereto continuing to be the charter and laws regulating and governing said corporation, except that it may be known and called, and sue and be sued, and may contract and do all acts which in the law it could have done in its old name, in and by the name set forth in the declaration aforesaid" (p. 253).

The testimony in this case shows compliance with these conditions. Compliance was also shown in *Cook* v. *Detroit, Grand Haven & Milwaukee Railway Company*, 43 Michigan, 349, and in that case the validity of the new organization as a continuance of the old corporation was recognized.

We thus come to the question of the effect of section 9 of the act of 1855. It has been often decided by this court, so often that a citation of authorities is unnecessary, that the legislature of a State may, in the absence of special restrictions in its constitution, make a valid contract with a corporation in respect to taxation, and that such contract can be enforced against the State at the instance of the corporation. It is said that we are not concluded by a decision of the Supreme Court of a State in reference to the matter of contract; that while the rule is to accept the construction placed by that court upon its statutes, an exception is made in case of contracts, and that we exercise an independent judgment upon the question whether a contract was made, what its scope and terms are, and also whether there has been any law passed impairing its obligation. *Douglas* v. *Kentucky*, 168 U. S. 488. It is in order to uphold the provision of the Federal Constitution that no State shall pass a law impairing the obligation of a contract that this duty of independent judgment is cast upon this court. But here the Supreme Court of the State has ruled in favor of the continued existence of a corporation and the applicability of certain statutes, and when upon the face of such statutes a valid contract appears we accept the ruling that the statutes are valid and applicable enactments. In other words, the Supreme Court of the State having sustained the validity of a statute from which a contract is claimed, this court follows that decision, and starts with the question, what contract is shown by statute?

The particular section which it is claimed creates the contract (section 9 of the act of 1855) provides that the company shall pay an "annual tax of one per cent on the capital stock of said company paid in, which tax shall be in lieu of all other taxes, except for penalties imposed upon said company by its act of incorporation, or any other law of this State." It is contended in the first place that this is a mere gratuity, which can be withdrawn at any time, a statute in respect to taxation subject to change like other revenue statutes, and *Wisconsin*

& Michigan Railway Company v. Powers, 191 U. S. 379, is cited
as authority.   But the difference between that case and this
is obvious.   That arose on a general law in respect to taxation;
this on a provision in a special act having reference to a particular
corporation, an act which called for and received acceptance
by the corporation.   It was said in the opinion in
that case (p. 385):

"A distinction between an exemption from taxation contained
in a special charter and general encouragement to all
persons to engage in a certain class of enterprise, is pointed out
in *East Saginaw Manufacturing Company* v. *East Saginaw*, 13
Wall. 373 ('*Salt Company* v. *East Saginaw*'); *S. C.*, 19 Michigan,
259.   In earlier and later cases it was mentioned that
there was no counter-obligation, service, or detriment incurred,
that properly could be regarded as a consideration for the supposed
contract.   *Rector &c. of Christ Church* v. *Philadelphia
County*, 24 How. 300; *Tucker* v. *Ferguson*, 22 Wall. 527; *Grand
Lodge &c. of Louisiana* v. *New Orleans*, 166 U. S. 143.   . . .
The presence or absence of consideration is an aid to construction
in doubtful cases—a circumstance to take into account in
determining whether the State has purported to bind itself
irrevocably or merely has used words of prophecy, encouragement
or bounty, holding out a hope but not amounting to a
covenant."

That there was ample consideration for a contract in this
case, if consideration be necessary, is shown by the opinion of
the Supreme Court in *Attorney General* v. *Joy, supra*, when it
says (p. 101):

"The act of 1855 was not promoted exclusively in the interest
of the railroad companies named in it, but the State itself
was largely concerned, and expected to accomplish important
public purposes by means of it.   Twenty years before that
time the State had planned for the construction of several parallel
lines of railroad across the State from east to west, one
of which was to be north of the line of the Michigan Central
Railroad, and was expected to be of very high value, not only

to all that part of the State through which it would run, but
to the whole State. Much disappointment had come from the
road not being constructed; and when the Detroit and Pontiac
Rail Road Company, which already had near thirty miles of road
in successful operation, and could command means for the con-
struction of more, proposed, on certain terms which were ex-
pressed in the act of 1855, to purchase the rights and franchises
of the Oakland and Ottawa Company, and to extend their own
road to Lake Michigan, there is no reason for doubting that the
people of the State at large looked upon this as a favorable
opportunity for accomplishing a desire which twenty years be-
fore had found expression in the legislation of the State, and
which ever since had been kept constantly in view."

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

"It has already been seen that the important public purpose
which the State had in view in assenting to the act of 1855 has
been accomplished; the railroad from Pontiac to Lake Michigan
has been constructed and for many years operated, and the
State has reaped the benefits. But in order to accomplish this
public purpose it seems to have become necessary to put the
bonds and shares of the Detroit and Milwaukee Railway Com-
pany upon the market as well in Europe as in this country:
the State recognized the necessity, and by its legislation pro-
vided for facilitating sales. The bonds and shares were sold
to the amount of very many millions; and every purchaser of
one of them made the purchase in reliance upon legislation of
this State which appeared to sanction if not to invite it"
(p. 104).

See further *Home of the Friendless* v. *Rouse*, 8 Wall. 430, 436,
in which we said:

"It is objected that there is no consideration stated in the
act for the release from taxation, which it is claimed is neces-
sary in order to uphold the contract. But this is a mistaken
view of the law on this subject.

"There is no necessity of looking for the consideration for a

legislative contract outside of the objects for which the corporation was created. These objects were deemed by the legislature to be beneficial to the community, and this benefit constitutes the consideration for the contract, and no other is required to support it."

Surely no clearer case of contract can be presented than one in which a legislature passes an act in respect to a particular corporation making special provision concerning taxation, and does so with a view of inducing large expenditures by the corporation and the completion of an unfinished road, whose completion is deemed of great public importance, and where the special provision is, as required, formally accepted, the expenditures made and the road completed.

It is suggested that this provision is not in terms made perpetual. A sufficient answer to this is found in *Home of the Friendless* v. *Rouse, supra* (p. 437):

"Testing the contract in question by these rules, there does not seem to be any rational doubt about its true meaning. 'All property of said corporation shall be exempt from taxation,' are the words used in the act of incorporation, and there is no need of supplying any words to ascertain the legislative intention. To add the word 'forever' after the word 'taxation' could not make the meaning any clearer. It was undoubtedly the purpose of the legislature to grant to the corporation a valuable franchise, and it is easy to see that the franchise would be comparatively of little value if the legislature, without taking direct action on the subject, could at its will resume the power of taxation."

It is further contended that the contract provided in section 9 is one relating to the property of the shareholders and not to that of the corporation. The terms "share," "stock," "capital," "capital stock" are of frequent and not uniform use, and we have often to turn to the context to see what is intended by its use in a particular case. That a distinction exists between that which is the property of the several shareholders and subject to taxation as other property belonging

to them, and that which is the property of the collective incorporated person we call a corporation, and subject to taxation as such, has been repeatedly pointed out. See *Farrington* v. *Tennessee*, 95 U. S. 679; *Railroad Companies* v. *Gaines*, 97 U. S. 697; *Railway Company* v. *Loftin*, 98 U. S. 559; *Bank* v. *Tennessee*, 104 U. S. 493; *Tennessee* v. *Whitworth*, 117 U. S. 129; *Bank of Commerce* v. *Tennessee*, 161 U. S. 134; *Shelby County* v. *Union &c. Bank*, 161 U. S. 149; *Central Railroad &c. Company* v. *Wright*, 164 U. S. 327; *New Orleans* v. *Citizens' Bank*, 167 U. S. 371; *Owensboro National Bank* v. *Owensboro*, 173 U. S. 664; *Citizens' Bank* v. *Parker*, 192 U. S. 73; *Delaware, L. &c. Railroad Company* v. *Pennsylvania*, 198 U. S. 341.

In the first of these cases a bank's charter provided that the company "shall pay to the State an annual tax of one-half of one per cent on each share of the capital stock subscribed, which shall be in lieu of all other taxes," and it was held that that was a contract in reference to the property of the shareholders, and prevented further taxation upon their separate property. In the opinion it was said (pp. 686, 687):

"The capital stock and the shares of the capital stock are distinct things. The capital stock is the money paid or authorized or required to be paid in as the basis of the business of the bank, and the means of conducting its operations. . . . The capital stock and the shares may both be taxed, and it is not double-taxation."

In the second is this ruling (p. 707):

"In general, an exemption of capital stock, without more, may, with great propriety, be considered, under ordinary circumstances, as exempting that which, in the legitimate operations of the corporation, comes to represent the capital."

And in *Tennessee* v. *Whitworth, supra*, p. 136, this description of separable elements of value was given:

"In corporations four elements of taxable value are sometimes found: 1, franchises; 2, capital stock in the hands of the corporation; 3, corporate property; and, 4, shares of the capital stock in the hands of the individual stockholders. Each

of these is, under some circumstances, an appropriate subject of taxation."

In several of the cases attention is called to the qualifying words which show an intent on the part of the legislature of something other than that generally embraced within the term "capital stock." But it is unnecessary to review these cases in detail.

By section 9 the tax is "on the capital stock of said company -paid in." Clearly that refers to the property which the corporation has received and presumably holds. It is not the individual property of the shareholders which is contemplated, but that which is in the treasury of the corporation, or included among its assets. This, as we have seen, is the ordinary meaning of the term "capital stock." Further, we find that this tax is to be "in lieu of all other taxes, except for penalties imposed upon said company." In other words, the tax upon the company of one per cent may be increased by penalties imposed upon the company and in no other way. Again, the tax is to "be estimated upon the last annual report of said corporation." While such report might be expected to include not merely the property belonging to the corporation but also the number and names of the stockholders and the number of shares held by each; and possibly also the amount paid in by each, yet the word "estimated" carries with it the idea of valuation rather than of mathematical apportionment. It suggests that the property reported by the corporation is to be the basis upon which the assessors shall make their valuation, so that the tax is "estimated" upon that property rather than fixed by the mere process of multiplication or division. That the tax is to be paid by the company is of course not conclusive on the question, but it is in harmony with all the other provisions of the section. Still further, we have the practical construction placed by the authorities for a long series of years—continued up to the year 1898. Under those circumstances we are of opinion that the tax provided for by section 9 is a tax upon the prop-

erty of the corporation and not a tax upon the shares of stock held by the shareholders. There was, however, a contract between the State and the corporation which prevented the subjection of the property of the corporation to any other than the tax prescribed in the statute.

The decree of the Circuit Court is

*Affirmed.*

Mr. Justice White dissented.