SUNSET TELEPHONE & TELEGRAPH CO. v. CITY OF POMONA et al.†

(Circuit Court of Appeals, Ninth Circuit. August 7, 1909.)

No. 1,678.

1. TELEGRAPHS AND TELEPHONES (§ 10*) — RIGHTS IN USE OF STREETS — CONSTRUCTION OF STATUTE.

Where a telephone company is authorized by its charter to do an interstate business, and uses its lines for that purpose, a right to build and maintain such lines in the streets of a city for that purpose, conferred by statute, is not limited nor affected by the fact that they are also used to transact local or intrastate business.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 6; Dec. Dig. § 10.*

Rights of telegraph or telephone companies to use of streets, see note to Southern Bell Telephone & Telegraph Co. v. City of Richmond, 44 C. C. A. 155.]

2. COURTS (§ 366*) — FEDERAL COURTS — AUTHORITY OF DECISIONS OF STATE COURTS.

In determining whether a complainant has acquired contract rights under a state statute, which are protected from impairment by the federal Constitution, a federal court will follow the construction placed upon such statute by the highest court of the state, where it is in favor of the contract relied on.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 957; Dec. Dig. § 366.*

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468.]

3. COURTS (§ 366*) — FEDERAL COURTS — AUTHORITY OF DECISION OF STATE COURTS — "TELEGRAPH."

The Supreme Court of California, in construing section 591 of the Penal Code, which makes it a penal offense for any person to maliciously take down or injure any line of telegraph, held that the word "telegraph," as used in such section, included in its meaning "telephone." Pol. Code Cal. § 4480, provides that with relation to each other the provisions of the four Codes are to be construed as though parts of the same statute. *Held*

that, under such rule and decision, Civ. Code Cal. § 536, which provides that "telegraph corporations may construct lines of telegraph along and upon any public road or highway * * * within this state," must be construed by a federal court as including telephone corporations, and as authorizing them to construct and maintain their lines in the streets of cities and towns without first procuring the consent of the municipal authorities.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 957; Dec. Dig. § 366.*

For other definitions, see Words and Phrases, vol. 8, pp. 6895–6897.]

4. CONSTITUTIONAL LAW (§ 134*) — OBLIGATION OF CONTRACTS — CONTRACTS OF STATES PROTECTED.

The construction and maintenance by a telephone company of its lines in the streets of a city under authority conferred by a state statute is an acceptance by it of the provisions of such statute, and creates a contract between it and the state, which is protected from impairment by the federal Constitution.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 344; Dec. Dig. § 134.*]

5. COURTS (§ 366*) — FEDERAL COURTS — AUTHORITY OF DECISIONS OF STATE COURTS.

A federal court will not adjudge a state statute invalid, as in violation of the state Constitution, where its validity has been expressly recognized by the highest court of the state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 957; Dec. Dig. § 366.*]

Gilbert, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Southern Division of the Southern District of California.

For opinion below, see 164 Fed. 561.

Lawler, Allen, Van Dyke & Jutten and Pillsbury, Madison & Sutro, for appellant.

Robert G. Loucks, for appellees.

Beverly L. Hodghead and J. P. Wood, amici curæ.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. The question presented on this appeal is whether the appellant, a California corporation, has the right to maintain its telephone poles and wires in the streets of Pomona, which is a city within the state, of the fifth class, without obtaining from the city a franchise therefor. No question is presented by the record respecting the right of the city to make a charge against the company for the use of those portions of the streets actually occupied by it. A controversy between the company and the city and its officers over the question stated having arisen, and the city authorities having commenced to cut down the poles of the company, the suit was commenced by it to secure injunctive relief, resulting, on the final hearing, in a decree dismissing the appellant's bill of complaint, from which decree the present appeal comes.

While, in the court below, the complainant's alleged rights were in part based upon the act of Congress of July 24, 1866, entitled "An act to aid in the construction of telegraph lines and to secure to the gov-

ernment the use of the same for postal, military and other purposes" (chapter 230, 14 Stat. 221), which act entered into the consideration of the court below and is much discussed on the present appeal by counsel for the appellees, no right growing out of that act is here asserted on the part of the appellant, and hence we omit all reference to it.

The appellant here bases its alleged rights upon certain provisions of the statutes of the state of California, and upon a claimed contract between it and the city, arising out of (1) the construction, maintenance, and operation of its plant in Pomona since August 8, 1898, and, more particularly, the maintenance, operation, and additional construction of its telephone system between the years 1898 and 1902, by and with the acquiescence and consent and under the direction of the city, at a cost of more than $10,000; (2) the change and removal, in the year 1904, by the appellant, of its poles and wires from Second street, at the request of the city, and their reconstruction on others°of its streets, with its approval and under its direction, at a cost to the appellant of more than $6,716.48; (3) the extension of the appellant's telephone system by the alleged permission of the city, under a resolution thereof of date October 23, 1903, at a cost of about $1,500; and (4) the assessment and taxation by the city to the appellant of a franchise for several years preceding the commencement of this suit, including the years 1904–05 and 1905–06, and the acceptance and use by the city of two free telephones from the appellant for more than three years prior to and after the commencement of the suit.

The appellant was incorporated in April, 1889, for the purpose of doing a general telephone and telegraph business in the states of California, Oregon, and Nevada, and the then territories of Washington, Utah, and Arizona, and elsewhere. Prior to its incorporation, to wit, on the 8th day of August, 1888, the city of Pomona passed an ordinance, numbered 30, granting to another and distinct corporation, called the Sunset Telephone-Telegraph Company, a franchise to erect telephone poles and wires along the public streets of the city for a period of 10 years, and in the month of May of the following year that company transferred to the appellant all of its property, including whatever rights it acquired under that ordinance. Since the month of May, 1889, the appellant has carried on a general telephone business throughout the state of California, including the city of Pomona, and in many parts of Oregon, Washington, and Nevada; its lines of poles and wires in Pomona being an integral part of its system, and its subscribers and all other persons using its system in any place in the states or territories mentioned, holding conversations from time to time by telephone with other subscribers and persons in other cities and places reached by the said system. On the 8th day of August, 1898, the term of the franchise granted by the aforesaid ordinance numbered 30 to the appellant's aforesaid assignor expired by limitation, notwithstanding which the appellant, according to the record, continued to construct, maintain, and operate its telephone system in Pomona without question on the part of the city as to its right to use the public streets and highways therein for its poles and wires, until

February 2, 1899, when the board of trustees of the city for the first time notified the appellant that it had "no franchise, privilege, or other legal right in the city." The record shows subsequent extensions and changes of the appellant's poles and wires in the city, made with the consent, and in some instances at the suggestion, of the city; but the contentions of the respective parties were such, from and after February 2, 1899, that no consent on the part of the city to the permanent maintenance of the appellant's poles and wires in the streets of the city without the procurement of a franchise from it can be properly affirmed of the matters occurring subsequent to that date. At no time, so far as the record shows, has the appellant disputed the exercise by the city of its police power in the matter of designating and indicating the places where, in the streets and highways of the city, appellant's poles should be set and its wires strung, and until some time in the year 1903 the city had always, through its proper officers, made such designation. In the latter year, upon the making of applications by the appellant for permission to set new poles and to make extensions so as to accommodate its new subscribers, the city refused to grant such applications, upon the ground that the appellant should secure a franchise from it.

In effect, the court below treated the appellant's telephone system as if it constituted two separate and distinct systems—one interstate and the other intrastate. In our opinion there is no valid ground for such a view. The appellant's poles and wires were erected under and by virtue of a charter which empowered it to transact an interstate telephone business. That such companies, like telegraph companies, are important agencies in the transaction of interstate commerce, is well settled. Muskogee Nat. Tel. Co. v. Hall, 118 Fed. 382, 55 C. C. A. 208; Southern Bell Telephone & Telegraph Co. v. Richmond (C. C.) 78 Fed. 858, and cases there cited. Each pole and wire erected formed an integral part of that system, just as each rail and tie of an interstate railroad constitutes an integral part of its system; and if there be any statute conferring upon the appellant as an interstate telephone company the right to construct and maintain its poles and wires in the streets of the city of Pomona (subject, of course, to the proper exercise of the police power of the city), we do not understand that any of them can be legally cut down or destroyed by municipal authority. The main question in the case, therefore, is, we think, whether there was any statutory authority for the erection and maintenance in the streets of Pomona of the appellant's poles and wires. As has already been said, the right of the city to impose a charge upon the company for the use of such portions of the city as it actually uses is not here involved.

Municipalities are the creatures of state Legislatures, and are, of course, subject to state legislation. By its Constitution of 1879 California undertook, in respect to certain privileges in the streets of cities and towns of the state, to control even the power of the Legislature of the state, and by section 19 of article 11 of that instrument made a direct grant to the persons therein designated of the right to lay pipes in the streets of any city or town within the state, for the

purpose of supplying such cities and towns and their inhabitants with water and light, such work to be done under the direction of the superintendent of streets, and under such general regulations as the municipality should prescribe for "damages and indemnity for damages," and with the right on the part of the municipality to regulate the charges therefor. See People v. Stephens, 62 Cal. 209. In the subsequent case of In re Johnston, 137 Cal. 115, 120, 69 Pac. 973, the Supreme Court of California said:

"When the sovereign authority of the state, either in its Constitution or through its Legislature, has created a right and expressed and defined the conditions under which it may be enjoyed, it is not within the province of a municipality, where such right is sought to be exercised or enjoyed, to impose additional burdens or terms as a condition to its exercise. The Constitution does not authorize the municipality to require a permit as a condition upon which the pipes may be laid in its streets, and its claim of a right to require a permit includes the right to refuse one, and the right to annex one condition to the exercise of the privilege implies the right to annex others, which may at least impair, if not in fact amount to a denial of, its exercise. The provision that the work is to be done under the direction of the superintendent of streets gives all the protection for the use of the streets that could be obtained under a permit; and, under the provision authorizing the municipality to prescribe regulations for damages and indemnity for damages, the city will be fully protected against any pecuniary loss or detriment."

And the Supreme Court of California then proceeded to refer with approval to the case of Township of Summit v. New York, etc., Tel. Co., 57 N. J. Eq. 123, 41 Atl. 146, saying:

"Under the statutes of New Jersey any telephone company was authorized to use the public roads and highways on the line of its route for the purpose of erecting poles thereon to suspend its wires and other fixtures, upon first obtaining the consent of the owner of the soil, with the proviso that the use of the public streets in any incorporated cities and towns of the state should be subject to such regulations and restrictions as might be imposed by the corporate authorities of said cities and towns. The authorities of the township of Summit passed an ordinance that no wire should be stretched across any public street without the permission of the township committee. In an action to restrain a telephone company from stretching its wires across certain streets of the township, the court held that this ordinance was not a 'regulation or restriction' under the statute, and was therefore invalid, saying: 'A right to prevent the use of the streets for suspending wires, unless previous consent is obtained, if such a right be lawfully conferred, authorizes a refusal to consent at discretion, and confers a virtual power of prohibition. The right to the use of the streets has been expressly granted by the Legislature, and the power to prohibit or interdict this use so granted cannot be inferred from the declaration, in the proviso annexed to the grant, that the use should be subject to such regulations and restrictions as may be imposed. The restrictions intended in such a proviso must be held to be restrictions in the nature of regulations, and not restrictions which shall prohibit the use or impose new conditions to the power to exercise the franchise.'"

The Codes of California took effect January 1, 1873. Section 286 of the Civil Code contained the provision that:

"Private corporations may be formed for any purpose for which individuals may lawfully associate themselves."

At that time there was no specific provision in respect to telephone companies; but section 536 of the same Code provided as follows:

"Telegraph corporations may construct lines of telegraph along and upon any public road or highway, along or across any of the waters or lands within

this state, and may erect poles, posts, piers or abutments for supporting the insulators, wires and other necessary fixtures of their lines in such manner and at such points as not to incommode the public use of the road or highway, or interrupt the navigation of the waters."

Section 591 of the Penal Code provided that:

"Every person who maliciously takes down, removes, injures or obstructs any line of telegraph or any part thereof, or appurtenances or apparatus connected therewith, or severs any wire thereof, is guilty of a misdemeanor."

Subsequently, and while the above provisions of the California statutes stood as quoted, the case of Davis v. Pacific Telephone & Telegraph, etc., Company, 127 Cal. 312, 57 Pac. 764, 59 Pac. 698, came before the Supreme Court of the state, in which it became necessary for the court to determine whether the word "telegraph," used in section 591 of the Penal Code, also included in its meaning "telephone." In holding that it did, the Supreme Court, in our opinion, in effect held that the same word "telegraph" in section 536 of the Civil Code of California also included within its meaning "telephone," since by section 4480 of the Political Code of the state the Legislature declared that:

"With relation to each other the provisions of the four Codes must be construed (except as in the next two sections provided [which two sections do not bear upon the present question]) as though all such Codes had been passed at the same moment of time, and were parts of the same statute."

And it has been, in effect, so decided by the Supreme Court of California in several cases. People v. Applegarth, 64 Cal. 229, 30 Pac. 805; People v. Dobbins, 73 Cal. 257, 14 Pac. 860; Bruner v. Superior Court, 92 Cal. 239, 28 Pac. 341. In the latter case the court held that the word "elisor," as used in the Code of Civil Procedure, must be deemed to have been used with reference to its definition given in the Political Code—saying that by section 4480 of the Political Code it is provided that:

"With relation to each other the provisions of the four Codes must be construed (except as in the next two sections provided), as though all such Codes had been passed at the same moment of time, and were parts of the same statutes. (The next two sections refer to cases of conflict, and have no application here.) When, therefore, 'elisor' is used in one Code, it must be taken to have been used with reference to its definition given in another Code."

In its opinion the court below held that the case of Davis v. Pacific Telephone & Telegraph Company, supra—

"is not controlling authority in the federal courts for at least four reasons: First. The word 'telegraph' is so often employed throughout the country in legislative enactments and judicial decisions that its definition would seem to be a matter of general, rather than local, law. Second. The Davis Case does not establish a rule of property, but only determines a question of criminal liability. Third. Said case is not a construction of section 536 of the California Code, but simply a definition of the word 'telegraph' in section 591 of the Penal Code of the state. In that case, the court, after giving to the word 'telegraph' a wider scope than consistent with its etymology, says: 'But is this construction justifiable in the case of the penal statute.' Section 4 of our Penal Code provides that "the rule of the common law that penal statutes are to be strictly construed has no application to this Code. All its provisions are to be construed according to the fair import of their terms, with a view to effect its object and to promote justice." In contemplation of this action, in recognition of the fact that a substantial identity exists between the two

words, we think no hesitation need be expressed in declaring that under section 591 of the Penal Code a criminal prosecution will lie for the illegal destruction of a telephone wire.' Thus it appears that the conclusion of the court was reached only by disregarding the common-law rule of strict construction, which section 4 of the Penal Code requires to be done; whereas section 536 of the Civil Code, being a grant from the state, upon its acceptance by the corporation, should be strictly construed. The Davis Case, therefore, is not a construction of section 536; on the contrary, the inference is a fair one, from the very language of the court, that if it had been passing upon said section under a strict rule of construction a more limited meaning would have been given to the word 'telegraph,' and telephone companies would have been excluded from the operation of the section."

It is undoubtedly true that the federal courts are not bound by the decisions of the state courts upon questions of "general law." We are, however, unable to agree with the learned judge of the court below in his holding that the construction placed by the Supreme Court of California upon the word "telegraph" in the sections of the state statute referred to, the effect of which was and necessarily is to affect property rights situated within the state, falls within any proper meaning of the term "general law" as above used. That the appellant, in erecting its poles and wires in the streets of the city of Pomona, relied for its authority, at least in part, upon section 536 of the Civil Code of California, is not only shown by the proof on the part of the appellant, but also appears from the affidavit of the city attorney of Pomona filed on behalf of the city, in which that affiant says, among other things:

"That William E. Dunn, of Los Angeles, one of the attorneys of said complainant company, has several times appeared before the board of trustees of said city in behalf of said complainant company; that he has also called at my office and consulted with me in reference to the matter; that at the beginning of our endeavor to place Sunset on an equal basis with other citizens and corporations said William E. Dunn relied principally upon section 536 of the Civil Code of the state of California as the source of authority for his said company; and that said section 536 gave his said company rights and privileges to operate within said city of Pomona independent of, separate from, and without regard to the rights or wishes of said city of Pomona or its board of trustees."

That a construction of a state statute by the highest court of the state, which establishes a rule of property within the state, will be adopted by the federal courts, is well-established law. In such cases even the Supreme Court of the United States will change its own ruling to conform to the decision of the highest court of a state. In Green v. Lessees of Henry Neal, 6 Pet. 289, 297, 8 L. Ed. 402, the Supreme Court said:

"It is admitted in the argument that this court, in giving a construction to a local law, will be influenced by the decisions of the local tribunals; but it is contended that, when such a construction shall be given in conformity to those decisions, it must be considered final—that, if the state shall change the rule, it does not comport either with the consistency or dignity of this tribunal to adopt the change. Such a course, it is insisted, would recognize in the state courts a power to revise the decisions of this court, and fix the rule of property differently from its solemn adjudications; that the federal court, when sitting within a state, is the court of that state, being so constituted by the Constitution and laws of the Union, and as such has an equal right with the state courts to fix the construction of the local law. On all questions arising under

the Constitution and laws of the Union, this court may exercise a revising power; and its decisions are final and obligatory on all other judicial tribunals, state as well as federal. A state tribunal has a right to examine any such questions, and to determine them; but its decision must conform to that of the Supreme Court, or the corrective power may be exercised. But the case is very different where a question arises under a local law. The decision of this question, by the highest judicial tribunal of a state, should be considered as final by this court; not because the state tribunal, in such a case, has any power to bind this court, but because, in the language of the court, in the case of Shelby v. Guy, 11 Wheat. 361, 6 L. Ed. 495, 'a fixed and received construction by a state in its own courts makes a part of the statute law.' The same reason which influences this court to adopt the construction given to the local law, in the first instance, is not less strong in favor of following it, in the second, if the state tribunals should change the construction."

Nor is it accurate to say, as did the court below in its opinion, that, because a federal question is involved in this case, the construction of the state statute by the highest court of California was not binding upon the federal court, which was therefore at liberty to exercise its own independent judgment in respect to the meaning of the state statute. The rule is that the federal courts will not depart from, but, on the contrary, will follow, the construction of a state statute by the highest court of the state, when such construction is in favor of the contract relied on, and not against it. That rule is thus stated by the Supreme Court of the United States in the recent case of Powers v. Detroit & Grand Haven Railway Company, 201 U. S. 543, 556, 26 Sup. Ct. 556, 557, 50 L. Ed. 860, where it is said:

"It has been often decided by this court, so often that a citation of authorities is unnecessary, that the Legislature of a state may, in the absence of special restrictions in its Constitution, make a valid contract with a corporation in respect to taxation, and that such contract can be enforced against the state at the instance of the corporation. It is said that we are not concluded by a decision of the Supreme Court of a state in reference to the matter of contract; that, while the rule is to accept the construction placed by that court upon its statutes, an exception is made in case of contracts; and that we exercise an independent judgment upon the question whether a contract was made, what its scope and terms are, and also whether there has been any law passed impairing its obligation. Douglas v. Kentucky, 168 U. S. 488, 18 Sup. Ct. 199, 42 L. Ed. 533. It is in order to uphold the provision of the federal Constitution that no state shall pass a law impairing the obligation of a contract that this duty of independent judgment is cast upon this court. But here the Supreme Court of the state has ruled in favor of the continued existence of a corporation and the applicability of certain statutes, and when upon the face of such statutes a valid contract appears we accept the ruling that the statutes are valid and applicable enactments. In other words, the Supreme Court of the state having sustained the validity of a statute from which a contract is claimed, this court follows that decision, and starts with the question: What contract is shown by statute?"

See, also, Minnesota Iron Company v. Kline, 199 U. S. 593, 26 Sup. Ct. 159, 50 L. Ed. 322; Armour Packing Company v. Lacy, 200 U. S. 226, 26 Sup. Ct. 232, 50 L. Ed. 451; N. Y. Cent. R. R. Co. v. Miller, 202 U. S. 584, 595, 26 Sup. Ct. 714, 50 L. Ed. 1155; Jefferson Branch Bank v. Skelly, 66 U. S. 436, 443, 17 L. Ed. 173, in which last case, in answer to an insistent and persistent claim that it was bound by the construction placed by the Supreme Court of Ohio upon statutory and constitutional provisions of that state, the Supreme Court of the United States said:

"We answer to this, as this court has repeatedly said, whenever occasion has been presented for its expression, that its rule of interpretation has invariably been that the constructions given by the courts of the states to state legislation and to state Constitutions have been conclusive upon this court, with a single exception, and that is when it has been called upon to interpret the contracts of states, 'though they have been made in the forms of law,' or by the instrumentality of a state's authorized functionaries, in conformity with state legislation. It has never been denied, nor is it now, that the Supreme Court of the United States has an appellate power to revise the judgment of the Supreme Court of a state, whenever such a court shall adjudge that not to be a contract which has been alleged, in the forms of legal proceedings, by a litigant, to be one, within the meaning of that clause of the Constitution of the United States which inhibits the states from passing any law impairing the obligation of contracts."

Taking section 536 of the Civil Code of California as originally enacted as including telephone as well as telegraph companies, as we think must be done in view of the decisions of the Supreme Court of the state to which reference has been made, it cannot be doubted that the erection by the appellant of its poles and wires in Pomona in the year 1889, and their maintenance and operation, was an acceptance by it of the provisions of that statute, which thereby became a contract between the company and the state, secured by the Constitution of the United States against impairment by any subsequent state legislation. Specific reference need not, therefore, be made to the franchise acts of the state, the first of which was passed in 1893 (St. Cal. 1893, p. 288, c. 204), further than to say that by those of March 11, 1901 (St. Cal. 1901, p. 265, c. 103), and March 20, 1905 (St. Cal. 1905, pp. 491, 492, c. 385), both telegraph and telephone lines doing an interstate business are expressly excepted from their provisions requiring a franchise from a municipality.

We have not overlooked the contention on the part of the appellees that section 536 of the Civil Code of California violates certain provisions of the state Constitution, and is, therefore, void. In considering such a question Mr. Justice Harlan, while sitting in the Circuit Court in the case of Smith v. Fond du Lac, 8 Fed. 289, said:

"I have not forgotten what was said by the Supreme Court of the United States, when required in Fletcher v. Peck, 6 Cranch, 128, 3 L. Ed. 162, to determine whether the Legislature of Georgia had in a particular enactment violated the Constitution of that state. The court there said, speaking by Chief Justice Marshall, that 'the question whether a law be void for its repugnancy to the Constitution is at all times a question of much delicacy, which ought seldom, if ever, be decided in the affirmative in a doubtful case.' The more recent decisions of the same court justify me, I think, in saying that a federal court, in determining the rights of parties under a state law, will never, in a doubtful case, adjudge such law to be in conflict with the state Constitution, unless sustained in so doing by some distinct adjudication of the highest court of the state."

Certainly, in view of the decision of the Supreme Court of California in the Davis Case, and especially the more recent decision of the same court in Western Union Telegraph Co. v. Visalia, 149 Cal 744, 87 Pac. 1023, where the court expressly recognized the validity of that section by holding that the Western Union Telegraph Company had the right to have its telegraph lines in the streets of the city of Visalia not only by the act of Congress of July 24, 1866, "but also from section 536 of our Civil Code," no federal court would be justi-

fied in holding that that section violates any provision of the Constitution of California.

The conclusion to which we have come is, we think, sustained by the cases of Abbott et al. v. City of Duluth (C. C.) 104 Fed. 833; City of Duluth v. Abbott et al., 117 Fed. 137, 55 C. C. A. 153; City of Wichita v. Old Colony Trust Co., 132 Fed. 641, 66 C. C. A. 19; Northwestern Exchange Telephone Co. v. City of Minneapolis, 81 Minn. 140, 83 N. W. 527, 86 N. W. 69, 53 L. R. A. 175; City of Duluth v. Duluth Telephone Co., 84 Minn. 486, 87 N. W. 1127; State ex rel. Wisconsin Telephone Co. v. City of Sheboygan et al., 114 Wis. 505, 90 N. W. 441, 442; Farmer & Getz v. Columbiana Co. Telephone Co., 72 Ohio St. 526, 74 N. E. 1078, 1080; State ex rel. Rocky Mountain Bell Telephone Co. v. Mayor, etc., of City of Red Lodge, 30 Mont. 338, 76 Pac. 758; Chamberlain et al. v. Iowa Telephone Co., 119 Iowa, 619, 93 N. W. 596; State v. Nebraska Telephone Co., 127 Iowa, 194, 103 N. W. 120; Wisconsin Telegraph Co. v. Oshkosh, 62 Wis. 32, 21 N. W. 828 —and·by the decision of Judge Beatty in the case of Sunset Telephone & Telegraph Co. v. City of Eureka et al. (C. C. N. D. Cal.) 172 Fed. 755.

For the reasons stated, the judgment is reversed, with directions to the court below to enter judgment for the complainant.

GILBERT, Circuit Judge (dissenting). By the opinion of the majority of the court it is held that the appellant has acquired a franchise for the use of ˙the appellee's streets under and by virtue of section· 536 of the Civil Code of·California, enacted March 21, 1872, which· provided that:

"Telegraph corporations may construct lines of telegraph along and upon any public road or highway along or across any of the waters or lands within this state," etc.

It is matter of common knowledge that, at the time of the adoption ·of the statute, telephones for public use were unknown. The opinion does not attempt to construe the statute, or to say that it authorizes the construction and maintenance of telephone lines; nor does it deny the doctrine that in construing a statute that meaning must be given to its words which they had at the date of the act, a doctrine which is ·well established by the authorities. 26 Am. and Eng. Enc. of Law, 611, and cases there cited. In Wadsworth Board of Works v. United Telephone Co., 13 Q. B. D. 914, it was said that a word used in a statute ·must receive the popular meaning existing at the time when the act of Parliament was passed. In Sharpe v. Wakefield, 22 Q. B. D. 242, Lord Esher said:

"Words of a statute must be construed as they would have been the day after the statute was passed, unless some subsequent statute has declared that some other construction is to be adopted, or has altered the previous statute."

Nor is it denied that in Richmond v. Southern Bell Telephone Co., 174 U. S. 761, 19 Sup. Ct. 778, 43 L. Ed. 1162, the Supreme Court, in construing a statute similar to section 536, held that its provisions had no application to telephone companies. Said the court in that case:

"In common and technical language alike telegraphy and telephony have different significations. Neither includes all of the other. The science of telephony as now understood was little known as to practical utility in 1866, when the greater part of the law contained in the title was passed. Telephone companies, therefore, are not within the category of the grantees of the privileges conferred by the statute."

But the opinion of the majority of this court assumes that all of these considerations are to be disregarded, and that section 536 of the Civil Code of California must be held to include telephone companies, under the doctrine that a federal court is bound to follow the construction placed upon a state statute by the highest judicial tribunal of the state. It is not to be doubted that, if the Supreme Court of California has placed a construction upon this precise statute, that construction must be adopted by a federal court. It is not asserted that this statute has ever been construed by the Supreme Court of California; but it is said that, because that court has held in Davis v. Pacific Tel. & Tel. Co., 127 Cal. 313, 57 Pac. 764, 59 Pac. 698, that the word "telegraph" as used in another statute, a section of the Criminal Code of that state, should be construed to include "telephone," a construction has been placed upon the word "telegraph" as used in section 536 which this court is bound to follow. This proposition, I confidently assert, is unsupported by reason or authority. While there is a prima facie presumption that the meaning of a word repeatedly used in the same statute is identical in all cases, unless there is something to show a different intention, the presumption is at best a weak one, or, as Endlich says (section 387), "it is not of much weight." But such a prima facie presumption has not been held to apply to words used in different statutes. On the contrary, the doctrine is well sustained that there is no presumption that a word is used in the same sense in different statutes. In L. & N. R. Co. v. Gaines (C. C.) 3 Fed. 266, it was held that the fact that the Constitution of a state uses a word in one sense in one clause is no evidence that it is used in the same sense in every other clause, and that even in the same statute a word is often used with distinctly different meanings; the court giving to it in each instance the meaning which the Legislature intended it to have in that particular connection. In State v. Knowles, 90 Md. 654, 45 Atl. 878, 49 L. R. A. 695, the court said:

"It may, indeed, well be conceded that, where a word susceptible of more than one meaning is repeated in the same act or section of an act (either meaning being in each case open to reasonable adoption), a presumption arises, more or less forcible according to the circumstances, that it is used throughout in the same sense; but where the subject-matter to which the word refers is not the same in both clauses, or where the surrounding circumstances are different, this presumption must yield to an adverse presumption, furnished by an analysis of the various purposes of the law and of the language in which those purposes are expressed."

See, also, Henry v. Trustees, 48 Ohio St. 676, 30 N. E. 1122, and cases there cited.

Section 536 of the Civil Code and section 591 of the Penal Code are subject to different rules of construction. The latter was, in the Davis Case, construed under the authority of section 4 of the Penal Code, which provided that:

"The rule of the common law that penal statutes are to be strictly construed has no application to this Code. All its provisions are to be construed according to the fair import of their terms with a view to effect its object and to promote justice."

But the construction of section 536 is controlled by the general rule, which is thus expressed in Knoxville Water Co. v. Knoxville, 200 U. S. 22, 26 Sup. Ct. 224, 50 L. Ed. 353:

"Only that which is granted in clear and explicit terms passes by a grant of property, franchises, or privileges in which the government or the public has an interest. Statutory grants of that character are to be construed strictly in favor of the public, and whatever is not unequivocally granted is withheld. Nothing passes by mere implication."

The provision of section 4480 of the Political Code that, with relation to time, the provisions of the four Codes must be construed as though all such Codes had been passed at the same moment of time and were parts of the same statute, does not purport to say that a word used in the statutes shall have the same meaning wherever used, and it has no bearing upon the question whether the Supreme Court of California has construed section 536 of the Civil Code; and the decision of that court in Bruner v. Superior Court, 92 Cal. 239, 28 Pac. 341, that under section 4480 the word "elisor," as used in Code Civ. Proc. § 226, must be deemed to have been used with reference to its definition given in the Political Code, has no application here, for the reason that the word "telegraph" has not been defined in either of the Codes, as was the word "elisor."

In Wood v. Brady, 150 U. S. 18, 14 Sup. Ct. 6, 37 L. Ed. 981, it was held that the construction placed by a state court upon one statute implies no obligation on its part to put the same construction upon a different statute, although the language of the two may be similar. In Carroll v. Carroll's Lessee, 16 How. 275, 14 L. Ed. 936, it was held that the construction placed upon a state statute by the highest court of that state, in a case where the decision did not necessarily involve the construction of the statute, is not binding on the federal courts. In Caesar v. Capell (C. C.) 83 Fed. 403, it was held that, while federal courts follow the construction of the state statutes given by the courts of the state, they are not required to adopt a construction based on implications from the language of a judicial opinion. In Southern Ry. Co. v. Simpson, 131 Fed. 705, 65 C. C. A. 563, it was held that the opinion of a state court of last resort construing a state statute is conclusive on the federal courts sitting in such state to the extent only of the precise question decided. Said Judge Lurton, for the court:

"The opinion as a construction of the statute is authoritative to the extent of the precise question decided, and no farther."

I submit that not only has section 536 not been construed by the Supreme Court of California, but that we have no means of knowing, from any of the decisions of that court, what construction would be placed upon it in a case involving its meaning. I think that the opinion of the court below (164 Fed. 561) correctly disposes of the questions of law involved in the case, and that the judgment should be affirmed.